HELEN CULVER

*v.*

THE PEOPLE *ex rel.* Kochersperger, County Collector.

*Filed at Ottawa March 28, 1896.*

</div>

1. STATUTES—*effect of adopting provisions of another statute by refer-
ence.* The adoption, by reference in a statute, of all or part of
another named statute does not include subsequent amendments
of such adopted statute, unless the intent so to include them is
expressed or strongly implied.

2. SAME—*effect of statutory reference to general law regulating a subject.*
Reference in a statute to the general law regulating a subject,
without allusion to any particular act, includes not only the law in
force when the adopting act is passed, but also that in force when
action is taken or proceedings are resorted to.

3. SPECIAL ASSESSMENTS—*act of May 2, 1873, for improvement of
parks and boulevards, construed.* The provision in section 3 of the act
of May 2, 1873, for the improvement of parks, etc., (Rev. Stat. 1874,
p. 744,) that all the provisions of article 9 of the City and Village
act, so far as applicable, "shall be in force and apply to any assess-
ment under this act," does not adopt the subsequent amendments
to said article 9 (Laws of 1887, p. 104; Laws of 1891, p. 81;) permit-
ting special assessments to be divided into installments.

4. SAME—*for improvement of park-boulevard cannot be made payable in installments.* A town ordinance, passed prior to the act of 1895, (Laws of 1895, p. 286,) for the improvement of a park boulevard in pursuance of plans and estimates of the park commissioners, which ordinance provides for a division of the assessment into installments, with interest upon deferred installments, is without authority of law, and void.

5. SAME—*void ordinance will not support judgment of confirmation.* An ordinance for a special assessment which is void invalidates all the proceedings based upon it, including the judgment confirming the assessment, a legal and sufficient ordinance being the foundation of a valid assessment.

6. SAME—*when failure to object to irregularities in an ordinance for assessment waives defect.* Irregularities in an ordinance for a special assessment, which fall short of establishing that the ordinance is invalid and void, are waived if not taken advantage of upon the application for confirmation of the assessment.

7. TAXES—*invalidity of ordinance may be shown on application for judgment of sale for assessment.* It is a valid objection to judgment for the sale of property for a special assessment, that the ordinance for the assessment, and the judgment confirming the same, provided, without authority of law, for a division of the assessment into installments, and that deferred installments should bear interest, these rendering the ordinance and judgment void.

APPEAL from the County Court of Cook county; the Hon. CHARLES H. DONNELLY, Judge, presiding.

This is an appeal from a judgment of the county court of Cook county for the sale of certain lots of appellant, for the first and second installments of a special assessment levied by the town of West Chicago, at the request of the Board of West Chicago Park Commissioners, for the improvement of Douglas boulevard. In the original proceeding for the confirmation of the assessment, the appellant did not appear, and default was taken against her; in the present application by the county collector for judgment and order of sale, the appellant filed certain objections, all of which were overruled by the county court, and judgment was entered against the land of appellant; the present appeal is prosecuted from such judgment of the county court.

The bill of exceptions shows, that, in support of her objections, the appellant upon the trial below, introduced all the proceedings in the original assessment proceeding, including the ordinance, the petition and the judgment of confirmation.   The ordinance was passed and the petition filed under the act of May 2, 1873, in regard to parks and boulevards.   (2 Starr & Cur. p. 1708).   Section 3 of that act provides, that "in case such board of park commissioners shall desire to improve any boulevard or pleasure-way under their control, or any part thereof * * * they shall make plans and specifications for such contemplated improvement,   * * *   and shall prepare estimates of the cost of such contemplated improvement and transmit such plans, specifications and estimates to the corporate authorities of the town where such improvement will be situated.   Such corporate authorities may upon the receipt of such plans, specifications and estimates * * * determine by ordinance to be entered upon the records of such town, whether such improvement shall be made or not; if they shall determine to make the same, they shall also prescribe that the same shall be made by special assessment or special taxation of contiguous property;   * * *   if such ordinance shall provide that such improvement shall be wholly or in part made by special assessments, they shall direct the supervisor of such town to file a petition, in the name of the town, in the county court of his county, for proceedings to assess the cost of such improvement; such petition shall recite the ordinance for the proposed improvement and the plans, specifications and estimates of the cost thereof and pray that the cost thereof may be assessed in the manner prescribed by law.   The proceedings to levy and collect such assessment subsequent to the filing of such petition, shall, in all things as near as may be, conform to the provisions of article 9 of an act   * * * to provide for the incorporation of cities and villages, approved April 10, 1872, and all of the provisions of said

article 9, so far as applicable, shall be in force and apply
to any assessment made under this act."

The fourth section of said act provides that the town
supervisor, clerk and assessor of such town shall be the
corporate authorities of such town.

On March 28, 1893, the corporate authorities of the
town of West Chicago passed an ordinance, of which sec-
tion 1 provides, "that the improvement of sixty feet on
the outside and on each side of said Douglas boulevard
or Douglas Park boulevard, as desired to be made by
West Chicago Park Commissioners and as shown by the
plans, specifications and estimates transmitted by said
West Chicago Park Commissioners to the corporate au-
thorities of the town of West Chicago shall be made, and
that the cost thereof together with cost of making and
collecting the assessment to be made therefor, shall be
paid by special assessment upon contiguous property
abutting on said boulevard, so as to be improved in the
manner provided by law and in accordance with such
plans, specifications and estimates."

Section 2 of said ordinance is set forth in the opinion
of the court.

On April 7, 1893, the town of West Chicago filed its
petition in said county court, to which was attached a
certified copy of said ordinance and also copies of the
plans, specifications and estimates presented to the cor-
porate authorities of said town.   Said petition prayed,
that commissioners be appointed to assess the cost of
such improvement and to make and levy a special assess-
ment therefor and to return an assessment roll, in the
manner provided by law; and that said special assess-
ment might be divided into installments, the first of
which should be twenty per cent of the total of said
assessment, which installment should be due and pay-
able, on and after the date of' confirmation of said as-
sessment; and that the remainder should be divided into
four equal installments payable annually thereafter, and

that each of said four installments should bear interest at the rate of six per cent per annum from the first day of October, 1893, as provided by law.

On July 8, 1893, final judgment or order of confirmation was entered in said proceeding which, among other things, found that in and by said ordinance, it was provided that the said special tax should be collected by installments, the first of which should be twenty per cent as aforesaid; and ordered that said special tax should be divided and payable by installments, the first of which should be twenty per cent of the total amount of said special tax and that the remaining portion thereof, after deducting said first installment, should be divided into four equal annual installments, payable annually thereafter and collected in the same manner that other assessments are now collected, that each of said last mentioned four installments should bear interest at the rate of six per cent per annum, etc.

By act approved April 29, 1887, article 9 of the City and Village act was amended by adding thereto sections from 55 to 68 inclusive. (Laws of Ill. 1887, p. 104). Said sections 55 and 63 were further amended by an act approved June 15, 1891. (Laws of Ill. 1891, p. 81). In both acts of 1887 and 1891 section 55 provides as follows: "That the amount of any special assessment, for any local improvement in any city, incorporated town or village, may be divided into installments, when so provided for by the ordinance providing for the said improvement, the first of which shall not exceed the sum of twenty-five per cent of the total of said assessment and which shall be due and payable from and after confirmation of said assessment. The remaining portion of said assessment after deducting the said first installment, shall be divided into four equal annual installments, which said installments shall be payable annually thereafter and collected in the same manner that other assessments are now collected," etc.

WILLIAM W. GRINSTEAD, (HAMLIN, HOLLAND & BOY-DEN, and J. J. PARKER, of counsel,) for appellant.

H. S. MECARTNEY, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon this application to the county court for judgment upon the delinquent list, one of the objections made by appellant was, that the ordinance, lying at the foundation of the original assessment proceeding, was illegal, invalid and void for several reasons. One of these reasons was, that the ordinance provided, that the special assessment should be divided into installments. It was also objected, that the judgment of confirmation of the assessment was not in conformity with the law, and was invalid.

The rule, that the judgment of a court acting without jurisdiction is void and may be successfully resisted even in a collateral proceeding, applies to a judgment confirming a special assessment, when application is made for the sale of the lands, upon which the special assessment has been levied, for non-payment of such judgment of confirmation. If, upon an application for the confirmation of a special assessment, the court has jurisdiction to render the judgment of confirmation, such judgment will conclude the land owner from questioning any of the proceedings had prior thereto, on a subsequent application for a judgment and order for sale of the premises. "On the other hand, if the proceedings anterior to the judgment confirming the assessment were so defective as not to authorize the court to act at all upon the question of confirmation, then it is equally clear the objections in question might properly be made upon an application for judgment and order of sale of the lots, as well as at any other time." (*Schertz* v. *People ex rel.* 105 Ill. 27; *Kilmer* v. *People*, 106 id. 529; *Goodwillie* v. *City of Lake View*, 137 id.

51; *Ayer* v. *City of Chicago*, 149 id. 262; *Dickey* v. *City of Chicago*, 152 id. 468).

The question then arises, whether the judgment of confirmation entered in the original assessment proceeding was a valid judgment.

The judgment of confirmation upon its face orders, that the special assessment, or, as it is therein called, the "special tax," be payable in installments. The petition, filed in the county court for the appointment of commissioners to assess the cost of the improvement, prays that the assessment be divided into installments, the first twenty per cent payable on confirmation of the assessment, the remainder in four equal installments payable annually thereafter. The ordinance, passed by the town of West Chicago on March 28, 1893, for the improvement of Douglas Park boulevard, as desired to be made by the West Chicago Park Commissioners, and as shown by the plans, specifications and estimates transmitted by said West Chicago Park Commissioners to the corporate authorities of the town of West Chicago, a certified copy of which ordinance was attached to said petition, provides in the second section thereof, "that said special assessment shall be divided into installments, and that the first of said installments shall be twenty per cent of the total amount of said assessment, and that the deferred installments shall bear interest at the rate of six per cent per annum as provided by law."

There was no authority in law, or under any statute, for the passage of an ordinance by the town of West Chicago for a special assessment for the improvement of a park or park boulevard, payable in installments. The act of May 2, 1873, in regard to parks and boulevards, authorizes the corporate authorities of any town to prescribe by ordinance, that the improvement of a boulevard, or any part thereof, may be made by special assessment or special taxation of contiguous property, but it does not authorize such authorities to pass an ordinance mak-

ing such assessment payable in installments. (2 Starr &
Cur. Stat. p. 1708). Section 3 of the act provides, that
the proceedings to levy and collect the assessment *subse-
quent to the filing of the petition* shall conform, as near as
may be, to article 9 of the City and Village act of April
10, 1872, "and all of the provisions of said article 9, so far
as applicable, shall be in force and apply to any assess-
ment made under this act." Was this language intended
by the legislature to include only the provisions of arti-
cle 9 as they existed on May 2, 1873, when the act of that
date was passed, or was it intended to include those pro-
visions not only as they then existed, but also as they
might thereafter be changed or modified or added to by
amendment?

Article 9, as originally enacted in 1872, contained no
provision for the collection of special assessments or
special taxes in installments, (*English* v. *City of Danville*,
150 Ill. 92), nor did it contain any such provision on May
2, 1873, when the act in regard to parks and boulevards
was passed. If, therefore, the act of 1873 merely adopted
article 9 as it existed on May 2, 1873, it did not adopt
any provision for the payment of special assessments in
installments. But by the act of 1887 amending article 9,
and by a further amendatory act passed in 1891, it was
provided that special assessments might be payable in
installments. If the act of 1873 did not adopt the provi-
sions of article 9 as they might be amended subsequently
to May 2, 1873, then it did not adopt the amendments
provided for in the acts of 1887 and 1891, to the effect
"that the amount of any special assessment for any local
improvement in any city, incorporated town or village
may be divided into installments, when so provided by
the ordinance providing for the said improvement."
(Laws of Ill. 1887, p. 104; Laws of Ill. 1891, p. 81).

The general rule is, that an act, which adopts by ref-
erence the whole or a portion of another statute, means
the law as existing at the time of the adoption, and does

not include subsequent additions or modifications of the statute so adopted, unless it does so by express or strongly implied intent. (Endlich on Inter. of Statutes, sec. 85, and cases in note 107; Sutherland on Stat. Const. sec. 257, and .cases in note 4; *Darmstaetter* v. *Moloney*,. 45 Mich. 621; *Knapp* v. *Brooklyn*, 87 N.Y. 520; *Kendall* v. *United States*, 12 Pet. 524; *Matter of Main Street*, 98 N.Y. 454). This rule seems to be strictly adhered to, where the prior act is particularly referred to in the adopting statute *by its title*. (*Jones* v. *Dexter*, 8 Fla. 276). Where, however, the adopting statute makes no reference to any particular act by its title or otherwise, but refers to the general law regulating the subject in hand, the reference will be regarded as including, not only the law in force at the date of the adopting act, but also the law in force when action is taken, or proceedings are resorted to. Thus, where an act provided, that property in the hands of an executor or administrator "shall be distributed *according to the provisions of the law regulating descents*," it was held, that the intention was to refer to any law of descents which might be in force at the time that the right to the distribution might become vested; (*Jones* v. *Dexter*, *supra*); again, where an act in relation to dividing an election district provided, that the proceedings in the case of such division "*shall be the same as in the erection or alteration of the lines of townships*," it was held, that the act did not refer to the mode existing at the time of its enactment, but was intended as a rule for future conduct to be found "by reference to the law in regard to township division existing at the time when the rule is invoked;" (*Kugler's Appeal*, 55 Pa. St. 123); so, where a statute provides for an appeal "*as in other cases*," the appeal is made in the manner prescribed by law for other cases at the time when it is proposed to take it; (*Kugler's Appeal*, *supra*); and where an act, prohibiting all contests of speed of animals for any bet or stakes or reward "*excepting such as are by special laws for that purpose expressly allowed*," it was

161—7

held that the exception was not limited to the time of
the adoption of the statute, but operated to except such
contests as are allowed by laws then existing or passed
after that time; (*Harris* v. *White*, 81 N. Y. 532); so, also, an
act, providing that "the said company may collect the
same tolls and enjoy the same privileges granted to
plank-road companies by the general plank-road law,"
was construed as referring to the general law as it then
was, and as it might become in the future.   (*Snell* v. *City
of Chicago*, 133 Ill. 413).

But, here, the reference in the act of May 2, 1873, is not
to any general law upon the subject of making and levy-
ing and collecting special assessments, but to the specific
"act to provide for the incorporation of cities and vil-
lages," approved April 10, 1872, mentioning said act by its
title, and referring in express terms to article 9 thereof.
There is nothing in the act of May 2, 1873, to indicate any
intent, either express or strongly implied, (*Darmstaetter* v.
*Moloney, supra,*) on the part of the legislature, that future
amendments to article 9, and not the provisions thereof
then existing, should be included within the terms of that
act.   We fail to discover any language or phraseology in
the act of May 2, 1873, which takes it out of the general
rule, that an act, adopting by reference the whole or a
portion of another statute, refers to the law as existing
at the time of the adoption, and not to subsequent addi-
tions or amendments thereto.   On the contrary, an ex-
amination of section 2 of the act leads to the conclusion,
that section 3, containing the above quoted reference to
article 9 of the City and Village law, was not intended
to embrace future amendments to the provisions of arti-
cle 9.   Section 2 provides, that the park taxes therein
mentioned shall be collected "in such manner *as is now or
may hereafter be provided by law for the collection of State and
county taxes;*" and that "provisions of law in respect to
collection of State and county taxes, and proceedings to
enforce the same, which are now in force, or *which may*

*be hereafter enacted,* so far as applicable, shall apply to said taxes." But when, in the very next section, mention is made of improvements by special assessment, there is no reference to future provisions by law or to enactments to be thereafter made. If it had been the intention of the legislature to include future amendments to article 9 within the meaning of section 3, it would have been easy to specify "all the provisions of article 9 now in force *or which may be hereafter enacted.*" But no words referring to future provisions are used.

Our conclusion is, that the acts of 1887 and 1891 amending article 9 of the City and Village act cannot be regarded as being amendments to the act of May 2, 1873, in relation to parks and boulevards; and that, therefore, the ordinance passed on March 28, 1893, by the town of West Chicago, providing for the division of the special assessment therein directed into installments with interest "as provided by law," was in fact without authority of law and void. It follows, that the judgment of confirmation in the special assessment proceeding based upon that ordinance is also void.

Counsel for appellee claims, that, this being an application by the county collector for judgment and order of sale, no objection, based upon the invalidity of the ordinance, can be made to the judgment of confirmation entered in the original assessment proceeding. Where an assessment is claimed to be illegal from the fact that it was based upon an insufficient ordinance, the objection to the ordinance as being insufficient must be made upon the application to confirm the assessment, and if it is not made then, the judgment of confirmation will be regarded as conclusive when called in question collaterally. (*Gage* v. *Parker,* 103 Ill. 528; *Prout* v. *People,* 83 id. 154; *Andrews* v. *People,* id. 529). But we apprehend, that the objections to the ordinance, which are waived when not presented upon the application for a confirmation of the assessment, are those, which show that the ordinance is insufficient in the

sense of being irregular, or that it is insufficient for some-reason which does not establish its invalidity or void character. Where, however, the ordinance is void, all the proceedings based upon it, including the judgment of confirmation, must be void also. This necessarily results from the rule that a valid ordinance lies at the basis of every valid assessment.

A legal and sufficient ordinance is the foundation of a valid assessment. (*City of Alton* v. *Middleton's Heirs*, 158 Ill. 442). In *City of Carlyle* v. *County of Clinton*, 140 Ill. 512, we said : "A valid ordinance is essential to proceedings by special assessment for the improvement of a street by a city. *If the ordinance is invalid, a judgment confirming an assessment on property is not authorized.*" So, here, this ordinance, which authorizes an assessment payable in installments and directs the deferred installments to draw annual interest, is invalid, and consequently the judgment, confirming the special assessment for improving Douglas boulevard, was not authorized. In *Murphy* v. *People*, 120 Ill. 234, where, in a judgment rendered by the county court against several lots, interest was allowed on the amount of the several special assessments, we said : "Unless some provision of the statute authorizes interest to be computed on the amount of the special assessments, it is quite evident the court had no power to allow it." In the case at bar, not only does the ordinance provide for the payment of interest upon the deferred installments, but the judgment of confirmation also orders that interest be paid thereon.

This application is for judgment for the first and second installments of the special assessment. The provision in the ordinance and judgment for payment of the assessment in installments and with interest involves the rendition of separate judgments for unpaid installments and interest in the respective years in which they fall due. Proceedings for such separate judgments, which are not authorized by statute, are necessarily invalid.

For the reasons here stated, we are of the opinion that the county court erred in not sustaining the objections made by appellant.

The judgment of the county court is accordingly reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.     *Reversed and remanded.*