# THE WEST CHICAGO PARK COMMISSIONERS

## v.

## A. S. FARBER et al.

*Opinion filed December 22, 1897—Rehearing denied February 8, 1898.*

1. FORMER CASES—*language used in Culver* v. *People, 161 Ill. 89, explained and limited.* The language used in the opinion in *Culver* v. *People,* 161 Ill. 89, to the effect that the assessment ordinance then under consideration was void, is to be applied only to the second section of the ordinance, which attempted to divide the assessment into installments.

2. CONSTITUTIONAL LAW—*section 20 of act of 1895, concerning park boards, is constitutional.* Section 20 of the act of 1895, concerning park commissioners, (Laws of 1895, p. 289,) which authorizes park commissioners to levy a new assessment to pay for an improvement completed under a former ordinance which has been declared invalid, is constitutional. (*West Chicago Park Comrs.* v. *Sweet,* 167 Ill. 326, followed.)

3. PARKS—*power of town boards under Park act of 1873.* The act of 1873, relating to parks, (Rev. Stat. 1874, p. 743,) does not confer power on town boards to levy an assessment for park purposes upon their own motion, but only at the request of park commissioners who initiate the improvement.

4. SAME—*park boards now act independently of town boards.* Since the act of 1895 (Laws of 1895, p. 286,) park commissioners may levy assessments for park purposes independently of the town authorities, and are not required to act through them, as formerly.

5. SAME—*effect where former ordinance was passed by town board.* The fact that a former assessment ordinance, which was held invalid because of an unauthorized division of the assessment into installments, was passed by the town board at the request of park commissioners, as required by the act of 1873, does not prevent the commissioners from passing an ordinance under section 20 of the act of 1895, (Laws of 1895, p. 289,) levying a second assessment to pay for the work completed under the former invalid ordinance.

6. SAME—*act of 1895 did not repeal act of 1873.* The act of 1895, to enable park authorities to make local improvements, (Laws of 1895, p. 286,) did not repeal the Park act of 1873, (Rev. Stat. 1874, p. 743,) but merely empowers the park commissioners to act independently of town boards, while not abridging their right to act through such town boards if they deem it of advantage.

7. SAME—*acts of 1873 and 1895 do not duplicate municipal authority over same territory.* The park acts of 1873 and 1895 do not create a

duplicate municipal authority in the same territory in providing for the passage of improvement ordinances both by town boards and park commissioners, as in each case the power to initiate proceedings rests with the park commissioners.

8. SAME—*word "streets," used in section 20 of the act of 1895, includes "boulevards."* The word "streets," used in section 20 of the Park act of 1895, which act confers power on commissioners to levy an assessment to pay for the improvement of "a street or streets, or parts thereof," is broad enough to include in its meaning "boulevards" as well as streets.

9. SPECIAL ASSESSMENTS—*ordinance only partly invalid is a proper basis for new assessment.* An assessment ordinance which has been declared invalid on appeal, for the sole reason that it attempted to divide the assessment into installments in an illegal manner, is not wholly void, and is a proper basis for a new assessment for work done thereunder.

10. SAME—*special assessment may be levied upon contiguous property.* The fact that an improvement ordinance provides for a special assessment upon "contiguous" property does not vitiate the assessment or constitute the proceeding one of special taxation, as a special assessment, as well as a special tax, may be levied upon contiguous property.

11. SAME—*effect on new assessment where former one was for assessment of "contiguous" property.* The fact that a former ordinance, which was held invalid, provided for a special assessment upon "contiguous" property, does not affect the right of park commissioners to levy a new assessment on property benefited to pay for the improvement constructed under the former ordinance.

12. RES JUDICATA—*determination of benefits under void judgment of confirmation not res judicata.* Where the ordinance on which an assessment is based has been held void the judgment of confirmation is void also, and the determination of benefits thereunder is not a bar to a different determination under a new assessment.

MAGRUDER, J., dissenting.

APPEAL from the County Court of Cook county; the Hon. RICHARD YATES, Judge, presiding.

H. S. MECARTNEY, and FRANCIS A. RIDDLE, for appellant.

WILLIAM W. GRINSTEAD, W. P. QUINBY, J. J. PARKER, JAMES R. WARD, GAGE & DEMING, WILSON, MOORE & McILVAINE, and GEORGE W. WILBUR, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a special assessment proceeding, brought by the West Chicago Park Commissioners, to levy a new assessment for the cost of a boulevard improvement on Douglas Park boulevard, the original assessment having become inoperative in consequence of the decision of this court in *Culver* v. *People,* 161 Ill. 89. The petition was dismissed by the county court of Cook county on the hearing of the legal objections and motions to dismiss of a large number of the property owners interested, from which decision the commissioners have appealed to this court.

The petition of the West Chicago Park Commissioners disclosed that they were corporate authorities for park purposes for the town of West Chicago, and that in pursuance of such authority they had located a boulevard or pleasure way in said town of West Chicago, known as "Douglas Boulevard" or "Douglas Park Boulevard;" that, desiring to improve such boulevard, they had prepared plans, specifications and estimates of the cost of such improvement, and presented them to the corporate authorities of such town, viz., the supervisor, assessor and clerk thereof, to make a special assessment for the purpose of paying the cost of such contemplated improvement; that the petitioners were duly requested and authorized to do so by a petition of the owners of the greater part of the land fronting on said proposed improvement; that the corporate authorities of such town, on March 28, 1893, passed a proper ordinance for such improvement, providing, among other things, that the expense of such improvement should be raised wholly by a special assessment upon the property, lots and lands fronting and abutting upon said Douglas boulevard; that a petition was filed by said town in the county court, and that an assessment roll was duly prepared and confirmed by the court on July 8, 1893; that a portion of said assessment was paid, but that a larger portion remains uncollected on account of the failure and refusal of various

lot owners to pay the same; that on obtaining judgment against such delinquents for the sale of their lands, they appealed to this court, and in *Culver* v. *People*, 161 Ill. 89, the judgment was reversed and the cause remanded, on the ground that the ordinance was void because it illegally provided for the division of the assessment into installments, and that in consequence thereof all attempts to collect such unpaid assessments had been abandoned; that the petitioners, on July 14, 1896, passed an ordinance for the making, levying and assessing of a new special assessment for the cost of the said improvement, and an estimate of the cost having been made and adopted they accordingly filed this petition in the county court.  The petition sets out this last ordinance in full, which recites the foregoing facts, and that the said boulevard improvement had been theretofore made and completed, and that, as provided in the former ordinance, it included asphalt roadways, leveling, stone sidewalks, black earth filling, common filling, grass plats, sodding, lamp-posts, trees, catch-basins, sewers, and superintendence of work, and ordered "that a new special assessment on the property benefited by said improvement, to the amount that the same may be legally assessed therefor, be levied to pay the cost of said boulevard improvement above specified, and the remainder of such cost to be paid by general taxation."

On the hearing of the legal objections and motions to dismiss in the county court, it was agreed by the parties that the former ordinance,—the one passed by the West Chicago town board,—in the record is the same ordinance referred to in the *Culver case*.  A very large number of objections were filed to this proceeding by a great number of objectors, and these objections are renewed in this court.

The first objection is, that the town board of West Chicago had no power to pass the original ordinance.  It is conceded that this objection was not raised in the *Cul-*

*ver case*, and consequently was not passed upon by this court in that case. It is elementary that all power to pass ordinances for local improvements is derived from the legislature. The legislature has passed numerous acts in relation to parks, and it is necessary to scrutinize closely the objects of the respective acts in order to determine what powers were intended to be conferred by them. The original act creating the West Chicago Park Commissioners, approved and in force February 27, 1869, (1 Private Laws of 1869, p. 342,) in section 4 gives the commissioners power "to levy special assessments on all property by them deemed benefited by the purchase, opening and improvement of said parks, boulevards and ways, as limited by this act." Section 14 of the same act provides: "No assessment for boulevard or park improvements shall be made until further authorized by the General Assembly." Under this act the commissioners acquired the boulevard sought to be improved by the ordinance here in question, but did not improve the same. In section 5 the commissioners are given power, by condemnation or otherwise, to acquire lands and appurtenances "in trust for the inhabitants of the town of West Chicago and of the west division of Chicago, and for such parties or persons as may succeed to the rights of said inhabitants, and for the public, as public promenade and pleasure grounds and ways, but not, without the consent of a majority, by frontage, of the owners of property fronting the same, for any other use or purpose, and without the power to sell, alienate, mortgage or encumber the same." The "Act in regard to the completion, improvement and management of public parks and boulevards, and to provide a more efficient remedy for the collection of delinquent assessments," approved May 2, 1873, in force July 1, 1873, (Laws of 1873, p. 129,) provided "that in any town which is now included within the limits of any city in this State in which a board of park commissioners shall now exist, having authority by law to acquire land and the appur-

tenances in trust for the inhabitants of such town and of a division or part of such city, and for such parties or persons as may succeed to the rights of such inhabitants, and for the public, as public promenade and pleasure grounds and ways, but not for any other use or purpose without the consent of a majority, by frontage, of the owners of the property fronting the same, and without the power to sell, alienate, mortgage or incumber the same." (Sec. 1.)  "In case such board of park commissioners shall desire to improve any boulevard or pleasure way under their control, or any part thereof,  *  *  * they shall make plans and specifications for such contemplated improvement,  *  *  *  and transmit such plans, specifications and estimates to the corporate authorities of the town where such improvement will be situated.   Such corporate authorities may  *  *  *  determine, by ordinance,  *  *  *  whether such improvement shall be made or not.   If they shall determine to make the same, they shall also prescribe that the same shall be made by special assessment or special taxation of contiguous property."  (Sec. 3.)  "That the town supervisor, clerk and assessor of such town be and they are hereby designated and constituted the corporate authorities of such town." (Sec. 4.)  That this act was intended to apply to the powers of the West Chicago Park Commissioners is obvious; whether to restrict or enlarge them, we shall not stop to consider.

It is urged that as the people resident in the West Chicago park district adopted the act of 1869 by a vote, they thereby gave their assent to the burden of taxation which might fall upon them on account of such park district, to be exercised only by commissioners selected in accordance with the provisions of such act,—citing *Cornell* v. *People*, 107 Ill. 372, and cases there cited.   The act of 1873 does *not* confer the power to levy this special assessment on the corporate authorities of the town of West Chicago *on their own motion*, but only at the request and on the in-

itiation of the park commissioners. Without their consent there is no authority in the town board for such an act. We do not see that the act in any way impairs the rights of the people of the West Chicago park district to be taxed by their own officers. As well might it be said that because the county clerk extends a tax on the books he levies the tax.

The case of *Kedzie* v. *West Chicago Park Comrs.* 114 Ill. 280, is not in conflict herewith. It seems that the proceedings in that case were brought under section 13 of the act of 1869, and the court held that section 4 of the act of May 2, 1873, did not compel proceedings pursuant to its terms, and the decision turned on the peculiar language of section 12 of the last mentioned act. This does not conflict with the case of *West Chicago Park Comrs.* v. *City of Chicago*, 152 Ill. 392. In that case the city of Chicago levied a special assessment on the park property, and we held that the commissioners had exclusive control over the streets and park property that had been acquired by it, and that the city could not tax them.

It is also urged that the jurisdiction of the park commissioners extends to territory not within that of the town board, and that the town board could not levy taxes on lands outside of its jurisdiction. A sufficient answer to this point will be found in the statement in the original ordinance that the improvement contemplated is entirely within the town of West Chicago, and it is not shown that any lands not within the jurisdiction of the town board have been assessed.

It is next objected that by the decision in the *Culver case* the original ordinance was declared absolutely void, and that it could not be made the basis of a new ordinance. It is conceded that the only fault this court found with that ordinance was that it illegally divided the assessment into installments, the court holding that there was no power granted to divide into installments. An inspection of the original ordinance shows that it provided,

in section 1, that the cost should be paid "by special assessment upon the contiguous property abutting on said boulevard so to be improved, in the manner provided by law," and in section 2, that the special assessment should be divided into installments. This court said in the *Culver* case (p. 99): "The ordinance passed on March 28, 1893, by the town of West Chicago, providing for the division of the special assessment therein directed into installments, with interest, 'as provided by law,' was in fact without authority of law and void." In *Kuehner* v. *City of Freeport*, 143 Ill. 92, this court used nearly the same language, and declared (p. 105) that "for the reason, as we have seen, special assessment and special taxation cannot be combined in one and the same local improvement, and the ordinance is therefore void." In construing this decision this court said in *Freeport Street Railway Co.* v. *City of Freeport*, 151 Ill. 451 (on p. 459): "The language in the opinion in the *Kuehner case*, to the effect that the ordinance was void, is to be applied only to the third section, which was in question." And: "When it becomes necessary to make a re-assessment, not because of any irregularity in the passage of the ordinance or because it fails to sufficiently describe the improvement, but solely because, in a distinct section, it attempts to levy the assessment in an illegal mode, we see no reason why the valid portions of the ordinance may not be treated as still in force and made the basis of the proceedings for the new levy." These latter cases would seem to settle the question even if it were otherwise doubtful. We must hold that only section 2 of the original ordinance was invalid, that the ordinance furnished a proper basis for a new proceeding, and that work done and completed under such ordinance was not done under an ordinance wholly void, so that no power remained to pay for it by a new special assessment. See, also, *Davis* v. *City of Litchfield*, 155 Ill. 384.

The next objection is, that the original ordinance was passed by the town board of West Chicago and the peti-

tion filed by the same board, while the new ordinance was passed and the petition filed by the West Chicago Park Commissioners,—an entirely different municipal corporation,—and that the act of June 24, 1895, (Laws of 1895, p. 286,) does not authorize any such proceeding, and if it did, it would be unconstitutional, because not expressed in the title of the act. The title of the act is: "An act to enable park commissioners or park authorities to make local improvements and provide for the payment therefor." Section 1 provides, "that all and any boards of park commissioners or park authorities now existing or hereafter established for the purpose of locating, establishing, inclosing, improving or maintaining any public park, boulevard, driveway, highway or street, are hereby vested with power and authority to levy, assess and collect special assessments or special taxes on contiguous property, or general taxes, or both, or otherwise, for the purpose of improving any boulevard, highway, driveway or street which may be now or may hereafter come under their control in any manner whatsoever." Section 2 provides that "the power and authority hereby vested are hereby declared to be additional to and not in limitation of any power and authority heretofore vested in said park commissioners or park authorities." Section 20 provides: "Where, in any case, such park board or park authorities having authority to improve any street or streets, or parts thereof, and to pay for the improvement thereof by special assessment, and said improvement shall have been made or partly completed, and a special assessment levied therefor shall have been set aside by a court of competent jurisdiction, or the provision in any ordinance for the payment for said improvement by special assessment shall have failed or been declared void by any court of competent jurisdiction, then and in any such case the said park commissioners or park authorities are hereby vested with power to levy, assess and collect a new special assessment on property bene-

fited by said improvement, or completed portion thereof, in the same manner as in other cases; and the lots, blocks, tracts or parcels of land found benefited by said improvement, or the completed portion thereof, shall each severally be liable to pay for said benefits, to the same extent and in the same proportion as in other cases: *Provided,* that the provisions and all proceedings in respect to such new assessments shall relate to and be in force in all cases in which, at the time of the passage of this act, work has been completed or partially completed under any special assessment proceedings or attempted special assessment proceedings heretofore levied or collected, or attempted to be levied and collected, by any such board of park commissioners or park authorities."

That section 20 is constitutional has been held in *West Chicago Park Comrs.* v. *Sweet,* 167 Ill. 326 (on p. 332): "The provision for a new assessment where one assessment has failed is within the general subject of legislation embraced in the title, and the existence of such a section could scarcely operate as a fraud or surprise upon the legislature, as not germane to that subject." (See, also, *Farr* v. *West Chicago Park Comrs.* 167 Ill. 355.)

We have already referred to the provisions of the act of May 2, 1873, in reference to the proper method to be pursued under that act to spread a special assessment through the instrumentality of the town board. The act further provides in section 11, that "all moneys collected under any proceedings authorized by this act shall be paid to such commissioners by the person or officer collecting the same." It will thus be seen that the park commissioners must initiate the proceedings for the levying of the special assessment; that the town board can only act when set in motion by such initiatory action of the commissioners, and that the moneys collected under such proceedings are to be paid to the commissioners. The town board has no control of the moneys when collected. The action and the improvement are really those

of the park commissioners, although the law made it nec-
essary that the proceeding be conducted and the work
done in the name of the town. The act of 1895 gives the
park authorities full power to act independently of the
town board, if they choose to do so. Section 20 expressly
provides for "any case" where the park authorities had
the authority to improve streets by special assessment,
even where the work has been completed under any at-
tempted special assessment proceedings theretofore lev-
ied or collected, or attempted to be levied and collected,
by any such board of park commissioners. The language
is broad enough to cover the case where the park com-
missioners attempted to collect a special assessment un-
der provisions of the law which compelled them to act
through the instrumentality of the town board.

It is also contended that the act of 1895 repealed the
act of 1873 by providing a complete substitute for it, and
that all unfinished proceedings under the act of 1873 must
fall, as no saving clause, it is said, is contained in the act
of 1895. We do not concur in this view. The two acts
are not necessarily repugnant, and it is not pretended
that any intention is disclosed in the act of 1895 to repeal
the act of 1873. On the contrary, the second section of the
act of 1895 expressly provides, as we have seen, that the
power and authority vested thereby are to be additional
to, and not in limitation of, any power and authority there-
tofore vested in the park commissioners.

It is contended that this section adds to the powers of
the park authorities, but not to the powers of the town
board. As already shown, under the act of 1873 the town
board could only act when requested to do so, and could
do nothing in the matter of levying such special assess-
ments unless set in motion by the park authorities. By
the act of 1895 the additional power to themselves pass
the ordinance was conferred on the park authorities; but
we cannot say that it would be no advantage to them to
act through the town board, if they chose to do so, rather

than to pass the ordinance themselves. If any such advantage might exist, then to hold that the act of 1873 was repealed by the act of 1895 would to that extent limit the power of the park authorities, which would be in conflict with section 2 of the last named act. There is no duplication of municipal authorities over the same territory having the same powers, as supposed by counsel, as all power to initiate the proceedings is in the park commissioners. Besides, section 20 of said act of 1895, by its terms, seems to have been enacted to cover cases of this character.

It is further objected that the original ordinance provided for special taxation, and not for special assessment; that section 20 of the act of 1895 only applies to special assessments, and that this is an attempt to combine the two modes, which is not allowable under the statutes. This court called the assessment contemplated in the original ordinance a special assessment throughout the opinion in the *Culver case*, and in one place said (p. 95): "The judgment of confirmation upon its face orders that the special assessment, or, as it is therein called, the 'special tax,' be payable in installments." The original ordinance declares, in section 1, that the cost of the improvement "shall be paid by special assessment upon the contiguous property abutting on said boulevard so to be improved, in the manner provided by law."

The petition prays that the cost be assessed "upon the property contiguous to and abutting thereon, in the proportion as each separate lot, piece or parcel of property or land so abutting and fronting thereon may be benefited by such improvement, and in such manner as is required by law in such cases made and provided." It is urged that special assessments cannot be confined to contiguous property; that all special assessments on contiguous property are in reality special taxation, and that it makes no difference by what name it is called; that the court will look at the substance to determine the charac-

ter of the assessment. In *Guild* v. *City of Chicago*, 82 Ill. 472, this court said (p. 478): "A majority of the court think the better interpretation to be, that the words 'special assessment,' in this constitutional provision, were used in the sense as had previously been defined by this court, —an assessment on property specially benefited, without regard to whether it was contiguous or not,—and that the words 'contiguous property' in the provision do not apply to special assessment, but apply to special taxation only." That is, special assessments need not be made on contiguous property alone. In *City of Springfield* v. *Sale*, 127 Ill. 359, there was a special assessment of contiguous property, and the court said (p. 363): "The fact that in the report the commissioners gave the frontage of the lots upon the street, or that they assessed against each lot the exact cost of the sewer in front of the same, will not, of itself, vitiate the assessment." (See, also, *Walker* v. *City of Aurora*, 140 Ill. 402.) But this exact point was raised in *Lake* v. *City of Decatur*, 91 Ill. 596, in which the court, referring to the *Guild case*, said (p. 601): "But, the question whether an ordinance would be void which did limit the assessment to contiguous property did not arise in the *Guild case* and was not decided, nor do we understand that the conclusion can be drawn, from what was said in that case, that such an ordinance would be invalid," and then proceeded to determine the point raised, and, referring to the statute, said: "Under this statute a city may make a local improvement on contiguous property either by special assessment or by special taxation, or both, as may be provided by ordinance." Referring to the constitution, the court further said: "Whether the assessment shall be confined to contiguous property, or whether all property benefited shall bear a part of the burden, the instrument is silent; and as the legislature has the right to confer the power without restriction in this regard, we are aware of no reason why that power may not be exercised."

The difference between special assessments and special taxation has been repeatedly pointed out by this court. It lies mainly in the manner of determining the benefits. In special taxation the body enacting the ordinance determines that the benefits are equal to the cost, and before the passage of the amendment to section 17, article 9, chapter 24, of the Revised Statutes, in 1895, that determination was conclusive and could not be reviewed by court or jury; while in special assessments the benefits are assessed by the commissioners, and were always reviewable by a jury. The original ordinance in this case was passed, and the assessment contemplated therein made and confirmed by the court, in 1893, and objections to the amount of the special assessment reviewed by a jury in several cases, which could not have been done if this had been a special tax proceeding.

A number of objections are raised as to the sufficiency of the ordinance passed by the appellants; that it does not specify the nature, character, locality and description of the improvement; that it does not recite the original ordinance, nor is it made a part of the petition herein; and that the estimate of the cost is insufficient and was not properly made, as there was no proper foundation on which to base it. The purpose of the requirement that the ordinance shall specify the nature, character, locality and description of the improvement is thus stated in *Levy* v. *City of Chicago*, 113 Ill. 650 (on p. 652): "Indeed, no intelligent estimate of the cost of the improvement could be made by the commissioners to be appointed for that purpose under section 135 of the statute unless the ordinance prescribes definitely the nature and character of the improvement, hence the necessity for such a description in the ordinance." To the same effect are *City of Kankakee* v. *Potter*, 119 Ill. 324, and *City of Springfield* v. *Mathus*, 124 id. 88. In *Freeport Street Railway Co.* v. *City of Freeport*, 151 Ill. 451, the objection was made that the petition in that case failed to recite an ordinance order-

ing the improvement to be made, the petition asking for the re-assessment of a special tax to pay for the cost of grading, graveling, etc., certain streets, as provided by the ordinance, which was made a part of the petition. The ordinance itself showed that said work had been done under an ordinance of the city approved April 29, 1890, and an amendment thereof approved May 17, 1890, and this court there said (p. 458): "This, we think, was a sufficient averment of the authority under which the work had been done. * * * We are, therefore, of the opinion that the objection to the sufficiency of the petition is not well taken." That case is decisive of the contention here raised. The former ordinance was certainly very full in all particulars.

It is also contended that section 20 of the act of 1895, under which this new assessment is sought to be made, only authorizes such a new assessment "to improve any street or streets or parts thereof," and that this assessment is for improving a boulevard. The word "boulevard" is thus defined in the Century Dictionary: "Originally, a bulwark or rampart of a fortification or fortified town; hence, a public walk or street occupying the site of demolished fortifications. The name is now sometimes extended to any street or walk encircling a town, and also to a street which is of especial width, is given a park-like appearance by reserving spaces at the sides or center for shade trees, flowers, seats, and the like, and is not used for heavy teaming." Murray's New English Dictionary defines it as "a broad street, promenade or walk, planted with rows of trees;" Worcester as "a broad promenade or street;" Webster as "a public walk or street occupying the site of demolished fortifications; hence, a broad avenue in or around a city;" the Standard Dictionary as "a broad city avenue specially designed for pleasure walking or driving, generally planted with trees, often in the center." This court, in *Kreigh* v. *City of Chicago*, 86 Ill. 407, in speaking of an act authorizing park authorities

to establish a boulevard or pleasure way, said (p. 411): "It has reference solely to the laying out and opening of streets, for the purpose indicated, by the park commissioners over lands to be acquired for that purpose." We think the word "street," especially in a park act, and where the context does not show a more restricted meaning, is broad enough to include a "boulevard."

The last objection we shall consider is, that as to the property of certain objectors the assessment levied on it in the original proceding reviewed in the *Culver case* is *res judicata*, and that such property cannot be assessed for a larger amount than was found by the jury in that case to be the full measure of the benefits derived by it from the contemplated improvement.    This court said in *O'Neil* v. *People*, 166 Ill. 561, that "if the ordinance is void, the court, in the assessment proceeding, had no jurisdiction, and all the proceedings based upon the ordinance are consequently void;" and in *Steenberg* v. *People*, 164 Ill. 478: "If the county court acted without jurisdiction in entering its judgment of confirmation, that judgment would be void and could be successfully resisted anywhere,"—citing *Schertz* v. *People*, 105 Ill. 27, *Boynton* v. *People*, 155 id. 66, and *Culver* v. *People*, *supra*.    In the latter case we said: "It follows that the judgment of confirmation in the special assessment proceeding, based upon that ordinance, is also void."

But it is contended by the objectors, that if the scope of the decision in the *Culver case* is narrowed to cover only the section of the original ordinance providing for the division of the assessment into installments, then the determination of the benefits by a jury in such original proceeding would be *res judicata* as to the amount,—citing *Greeley* v. *Town of Cicero*, 148 Ill. 632.    In that case, however, the original assessment had not been declared void by any court, and the case is therefore not in point. Suppose one of these objectors, instead of Culver, had appealed to this court and his assessment had been de-

clared void, as Culver's was; could he now come into court and say that it is valid and *res judicata* as against a new assessment? We think not. All proceedings in the county court were void, because based upon a void provision of the ordinance. In fact, the judgment against the objectors was that the assessment should be divided and payable by installments, and that feature was distinctly held to be illegal in the *Culver case.* In *Freeport Street Railway Co.* v. *City of Freeport, supra,* it was claimed that the city was estopped by its former judgment. The court said: "The answer is, that judgment was vacated and set aside, else this proceeding would have been unnecessary."

The judgment of the county court dismissing the petition of appellants is reversed, and the cause remanded for further proceedings in conformity herewith.

*Reversed and remanded.*

Mr. JUSTICE MAGRUDER, dissenting.