## E. A. CUMMINGS *et al.* ·

*v.*

## THE WEST CHICAGO PARK COMMISSIONERS.

*Opinion filed October 13, 1899.*

1. EVIDENCE—*extent to which recital in ordinance is prima facie evidence.* A recital in an ordinance providing for an improvement, that the petition of the owners of a majority of the land fronting on the improvement was presented to the municipal authorities, is sufficient *prima facie* evidence of the existence of such jurisdictional fact. (*Thorn* v. *West Chicago Park Comrs.* 130 Ill. 594, distinguished and explained.)

2. SAME—*effect of recital in ordinance that property owners' petition was presented to authorities.* In an ordinance for an improvement a recital that a petition of the owners of a majority of the land was presented to the municipal authorities, sufficiently shows that the requisite petition was before them, where the recital is as broad as the statute, though the contents of the petition are not stated.

3. PUBLIC IMPROVEMENTS—*when new ordinance for an assessment is sufficiently authorized by original ordinance.* A provision in an ordinance that the cost of the improvement shall be paid by special assessment is a sufficient basis for a subsequent ordinance and proceeding to enforce such assessment, where the original ordinance was declared invalid because the particular form of assessment provided for by it was without authority of law.

4. SAME—*ordinance need not mention prayer of petition as to manner of paying for improvement.* An ordinance for a public improvement need not contain a recital as to the prayer of the property owners' petition concerning the manner in which the improvement should be paid for, where the question whether its expense shall be met by general tax or wholly or in part by special assessment or taxation is a matter for the corporate authorities to determine.

5. SAME—*improvement of two connected parallel strips of boulevard is not a double improvement.* An ordinance for the improvement of strips of land sixty feet in width on each side of a boulevard of which they are parts, (the intervening space being a parkway,) and between which run intersecting streets, provides for but a single improvement.

6. SAME—*when an agreement as to amount of assessment on particular property is not conclusive.* An agreement that property shall be assessed but a certain amount in consideration of building restrictions to which it is subject does not prevent an assessment for the amount to which it is actually benefited, where, by a subsequent decree rendered at the instance of the land owner, the property was relieved from the building restrictions.

APPEAL from the County Court of Cook county; the ·Hon. W. T. HODSON, Judge, presiding.

WILSON, MOORE & McILVAINE, for appellants.

FRANCIS A. RIDDLE, and H. S. MECARTNEY, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is an appeal from a judgment confirming a special assessment for the improvement of Douglas boulevard, extending from Garfield Park south and east to Douglas Park. A former proceeding to levy an assessment was before us under the titles of *Culver* v. *People,* 161 Ill. 89, *Farrell* v. *Town of West Chicago,* 162 id. 280, *Connor* v. *Town of West Chicago,* 162 id. 287, and *White* v. *Town of West Chicago,* 164 id. 196. By the decisions in those cases the proceeding was set aside and the judgment of confirmation reversed. The present petition was then filed based upon a new ordinance, and this was brought before us in *West Chicago Park Comrs.* v. *Farber,* 171 Ill. 146. Since the reversal of the judgment in that case there has been a hearing, at which the assessment roll was confirmed.

At the last hearing appellants moved to dismiss the petition on the ground that the original ordinance was declared void in *Culver* v. *People, supra,* and therefore said ordinance did not provide for any special assessment which could ever become a charge upon private property, and this attempted assessment is contrary to law and in conflict with the fourteenth amendment to the constitution of the United States. This question was decided adversely to this claim in *West Chicago Park Comrs.* v. *Farber, supra,* but it is insisted that the decision in that case was wrong. The constitution and the statutes provide for making local improvements by special assessment, and we have uniformly held that they confer no authority to make a local improvement upon some other plan, or without any provision for a special assessment, and af-

terward provide for payment by such assessment. The improvement is to be made by special assessment, and consequently there must be a provision for its payment by that method when it is made. The liability to a special assessment must be created by the ordinance which provides for making the improvement, and such a liability is created by a provision of the ordinance that the cost of the improvement shall be paid by special assessment. The original ordinance, which was passed upon in *Culver* v. *People, supra,* provided that the improvement should be made "and that the cost thereof, together with the cost of making and collecting the assessment to be made therefor, shall be paid by special assessment upon contiguous property abutting on said boulevard." This was a provision that the improvement should be made by special assessment, and was sufficient upon that subject. The ordinance, however, went further, and there was an attempt to create a particular assessment unknown to the law governing the park commissioners. In that attempt section 2 of the ordinance ordained as follows: "That said special assessment shall be divided into installments; that the first shall be twenty per cent of the total amount of said assessment, and that the deferred installments shall bear interest at the rate of six per cent per annum." A petition was filed in the county court for the appointment of commissioners to spread an assessment, to be divided into installments, the first twenty per cent payable on confirmation of the assessment and the remainder in four installments, payable annually thereafter. There was no authority of law for the particular assessment provided for in the ordinance or the making or confirmation of an assessment of that character, and there was no power or jurisdiction in the court to entertain such a petition and grant the prayer thereof or render the judgment prayed for. The right to levy special assessments is derived solely from statutes, and a special statutory jurisdiction is conferred upon the county court

by the statute providing for an assessment. The court may obtain jurisdiction of the subject matter of a special assessment by the filing of a petition under some existing law, calling upon the court to act. If a petition based on any existing statute were presented the court would acquire jurisdiction over the subject, and if such jurisdiction once attached, no matter how erroneous the judgment might be, it would be binding, unless reversed in a direct proceeding. In this case the particular assessment provided for was without authority of law, and the ordinance was void as to such provision. The petition called upon the court to act under the void provision forbidden by the law, and the court could not, under it, enter any judgment for a different assessment. The court was merely asked to do something which it had no power to do in a matter not pertaining to its general jurisdiction, where jurisdiction must be derived from statute. We therefore held that the ordinance and petition did not confer jurisdiction. There remained, however, in the original ordinance the valid provision that the cost of the improvement should be paid by special assessment, and we adhere to our conclusion in *West Chicago Park Comrs.* v. *Farber, supra,* that it was a sufficient basis for the subsequent ordinance and proceeding to enforce the liability. We think the court was right in overruling the motion, based on the proposition that the original ordinance did not provide for any special assessment.

The statute under which this assessment was made contains a proviso, as follows: "*Provided,* that no improvement 'or sewer shall be made or constructed under the provisions of this section, except upon the petition of the owners of a majority of the land fronting on the proposed improvement or sewer." (Hurd's Stat. 1895, p. 1088, sec. 3.) The petition recites that the petitioner was requested and authorized to make the improvement by a petition in writing of the owners of a majority of the land fronting on said improvement, as required by said act.

At the close of the testimony on behalf of the appellee commissioners, appellants moved to dismiss the proceeding on several grounds, one of which (No. 5) was as follows: "That no petition of the property owners is proven, as required by the statute of 1873."

The ordinance adopted by the corporate authorities of the town of West Chicago, providing for the improvement in question, was received in evidence. It recited that the park commissioners had control of the boulevard to be improved and desired to improve the same, and had so notified the said corporate authorities of such town, and had presented to such corporate authorities plans, specifications and estimates of the cost of the improvement, and recited further as follows: "Whereas, the commissioners have submitted to the corporate authorities of the town of West Chicago a petition of the owners of a majority of the land fronting on the said improvement, duly verified by their engineer; and whereas, the corporate authorities of the town of West Chicago have found that said petition contains the signatures of the owners of a majority of the land fronting on said Douglas boulevard: Now, therefore, be it ordained," etc.

Exclusive jurisdiction and power to adopt ordinances providing for such improvements was conferred by law upon the said corporate authorities. The park commissioners were not, as they have been by later statutes, invested with power to adopt an ordinance, but were required to apply to the corporate authorities of the town for an ordinance under which the improvement might be made. The effect of the proviso hereinbefore quoted was to prohibit such corporate authorities from passing the ordinance in question unless petitioned to do so by the owners of a majority of the land fronting on the proposed improvement. Such a petition was a pre-requisite to the power of the corporate authorities to enact the ordinance. It was, therefore, of necessity, the official duty of such corporate authorities to ascertain, before assuming to act

on the question of the adoption of the ordinance, whether a petition which fulfilled the requirements of the statute was before them.   It appears from the recitations of the ordinance a petition purporting to be that which the law demanded was laid before the corporate authorities, and that that body entered upon an official investigation in order to ascertain whether the petition met the requirements of the law, and the ordinance sets forth the result of such official action taken by such authorities.   The ordinance recites that said corporate authorities, upon such official investigation, found the petition contained the signatures of the owners of a majority of the land fronting on said Douglas boulevard so proposed to be improved.   This recitation we think properly receivable in evidence as *prima facie* proof of the facts recited.   The corporate authorities of the town were, by the statute, invested with sole power in the premises, and were erected, by the statute, into an official body charged with the duty of acting impartially, in their official capacity, as between the park commissioners and the owners of private property which would be subject to the burden of special assessments in the event the improvement as proposed by the park commissioners should be carried into completion.   The official duty first devolving upon the corporate authorities was to ascertain whether the owners of a majority of the land fronting on the proposed improvement had petitioned for the improvement.   They discharged that duty.   The clerk of the town was, by said section 3 of the act, expressly authorized and required to keep a record of the proceedings of said corporate authorities and record the ordinances adopted by them, to the same extent the clerk of a city or village is required and authorized to keep the records of the official acts of the city council or village board in proceedings for making improvements to be paid for by special assessments.

On the subject of the admissibility of public writings in evidence, Mr. Greenleaf, in his work on Evidence,

(vol. 1, secs. 483, 493,) says: "The next class of public writings to be considered consists of *official registers,* or books kept by persons in public office, in which they are required, whether by statute or by the nature of their office, to write down particular transactions occurring in the course of their public duties and under their personal observation.  These documents, as well as all others of a public nature, are generally admissible in evidence notwithstanding their authenticity is not confirmed by those usual and ordinary tests of truth: the obligations of an oath, and the power of cross-examining the persons on whose authority the truth of the documents depends. * * * In regard to these *official registers,* we have already stated the principles on which these books are entitled to credit, to which it is only necessary to add, that where the books possess all the requisites there mentioned they are admissible as competent evidence of the facts they contain."  The rule is referred to by Mr. Welty, in his work on Assessments, (sec. 280,) as follows: "When a petition is presented and a committee reports that it is signed by owners of a majority of frontage, and the report adopted and a proper record made of the proceedings, a *prima facie* case will be made of jurisdiction, and in all subsequent proceedings it will be presumed that the board acquired jurisdiction."

In *Wells* v. *Hicks,* 27 Ill. 343, we held the recitals in the record of the proceedings of the board of highway commissioners were competent to be received in evidence to show that certain notices, necessary to the jurisdiction of the commissioners, had been posted as the law required.  In *Shinkle* v. *McGill,* 58 Ill. 422, we said: "It is made the duty of the commissioners, before determining to lay out any new road or to alter or discontinue any old one, to fix upon a time and place to hear any reasons which may be offered for or against the establishment or discontinuance of such road.  Three notices of the time and place must be posted in three of the most public

places in the town, at least eight days previous to the time of meeting.  There is no evidence of such notice in this record, except the recital in the final order establishing the road.  The posting of these notices is a positive requirement of the statute and must be complied with. The question is, what is sufficient evidence of compliance? The final order, signed by the commissioners and deposited with the town clerk, does particularly specify that three notices were posted in three of the most public places in the town, eight days previous to the time of meeting.  As we construe the statute, there can be no higher or better evidence of the fact.  *  *  *  We think the full recital in the final order, of a strict performance of the duty, is sufficient to confer jurisdiction.  The case of *Commissioners* v. *Harper*, 38 Ill. 103, is not similar to this in the facts.  This court held in that case that the giving of the notice was a jurisdictional fact, which would never be presumed in a direct proceeding.  In that case the facts as to the posting of the notice were not recited in the order declaring the road a public highway."

The ruling in the case of *Shinkle* v. *McGill*, *supra*, was approved in *Frizzell* v. *Rogers*, 82 Ill. 109, but in that case the record of the commissioners did not contain the recital necessary to confer jurisdiction, and there being no other proof thereof, it was ruled it did not appear the commissioners had jurisdiction to enter the order.

In *Board of Supervisors* v. *Magoon*, 109 Ill. 142, in disposing of the objection it was not proven the commissioners had posted the notices required by statute to authorize them to act, we said: "The commissioners recite, in the order entered at the hearing, that they met at the time and place named in the notice, and that is evidence that notice was given.  (See *Wells* v. *Hicks*, 27 Ill. 343; *Frizzell* v. *Rogers*, 82 id. 109.)  We are clearly of opinion the record shows that the highway commissioners had jurisdiction."

The rule to be deduced from what was said by Mr. Cooley in his work on Taxation, (8th ed. p. 465,) and by

Mr. Dillon in his work on Municipal Corporations, (4th ed. p. 800,) is, that when the assent or petition of a designated number of persons is necessary to the jurisdiction of the city council or the proper authorities to take official action, the finding of the council or body that the requisite number of persons had assented or petitioned for action on the part of said council or authorities is not conclusive of the jurisdictional fact, but is sufficient, in the absence of countervailing proof.

Many adjudged cases are cited by appellants as in support of their contention the recitals found in the record of the corporate authorities in the case at bar have no potency whatever as evidence that a lawful petition was presented. We have examined these authorities. It is impractical to attempt to review them. We think they may be divided into four classes: (1) Those wherein the rule is announced that a record showing merely that ultimate action was taken by an official body (not judicial in character) does not establish, even *prima facie*, that a fact necessary to the jurisdiction of the body to act existed; (2) those holding that a recital in a record of the proceedings of such a body that a jurisdictional fact existed was not conclusive of the existence of such fact, but might be made the subject of opposing testimony; (3) those where the facts recited were not sufficient to establish the jurisdictional fact; (4) those wherein it is held that on consideration of the recitals and all other testimony produced upon the point the existence of the jurisdictional fact was not maintained by the preponderance of the evidence.

We do not affirm authorities are wholly wanting to sustain the view that recitals of the character under consideration have no evidentiary force, but we venture to assert the overwhelming weight of authority is to the contrary, and that all well considered decisions will be found to fall within one or the other of the classes hereinbefore mentioned. In the case of *Thorn* v. *West Chicago*

*Park Comrs.* 130 Ill. 594, (an adjudication much relied upon by appellants,) the power of the commissioners to adopt an ordinance appropriating a street for the purpose of connecting a park boulevard or drive-way with other parts of the city, arose for determination. It was held such power could be exercised only by the consent, in writing, of the owners of a majority of the frontage of lands or lots on such street. The park commissioners adopted an ordinance appropriating portions of Twelfth street and Ogden avenue for the purpose of connecting Douglas Park with other portions of the city of Chicago. The ordinance provided for the improvement of said portions of said streets by special assessments. On the hearing of the application for the confirmation of the assessment roll the commissioners undertook to establish the necessary consent of the owners of property on said streets by producing a paper purporting to be a petition of such owners. The trial court received the petition in evidence over the objections of the objectors. This court held said petition was not competent to be received in evidence for the reason the signatures of such alleged consenting petitioners were not properly authenticated, and also because it did not appear that the alleged consenting petitioners were the owners of a majority of the land fronting on the proposed improvement. In disposing of the case it was said the fact this consent petition was acted upon by the commissioners, and that it was the duty of such commissioners, in the first instance, to determine whether the owners of a majority of the land involved had consented to the appropriation of the street, could have no effect to establish that the commissioners had jurisdiction to carry out the powers conferred by the statute. It will be observed the commissioners in that case voluntarily elected to attempt to prove in the trial court the requisite consent that the streets might be appropriated as contemplated by the ordinance, by the production of the written consents in the nature of a pe-

tition in writing. The trial court held such written petition made a *prima facie* case for the commissioners. The objectors appealed. This court found the writing so produced was wholly insufficient to authorize the commissioners to act, and declared the fact the commissioners were required, in the first instance, to determine for themselves whether the requisite number of property holders had consented to the proposed appropriation of the streets, and that said commissioners had determined they had jurisdiction to act from an inspection and consideration of the petition, could have no effect as presumptions in favor of the authority of the commissioners to adopt the ordinance. The commissioners having voluntarily produced as evidence a petition as constituting their authority to act, and such petition proving to be wholly insufficient to sustain such claim, it would have been beyond reason to hold that the jurisdiction of the commissioners could be established and the judgment appealed from affirmed on the ground they considered the petition to be sufficient and had acted upon it in that view. The decision cannot be regarded as the declaration of this court that the recitals of fact of the commissioners in an ordinance that the requisite petition had been presented could not be availed of in the trial court as *prima facie* proof of the truth of the facts recited. We think the recital in such an ordinance of the finding of the corporate authorities that a preliminary fact necessary to confer jurisdiction and power on them to act existed is sufficient *prima facie* evidence of the existence of such fact. If the truth of the recital be challenged by testimony having a controverting tendency it becomes an issue of fact, and the burden rests upon the commissioners to sustain the truth of the recital by a preponderance of all the testimony bearing upon the point.

There is no force in the insistence the facts so recited are insufficient to show the requisite petition was before the said corporate authorities. True, the prayer of the

petition is not recited.   It is recited that the park com-
missioners desired to improve the boulevard, and had de-
livered to the corporate authorities plans, specifications
and estimates of the cost of the proposed improvements,
together with a petition of the owners of a majority of
the land fronting on said improvement, and that the cor-
porate authorities determined the petition contained the
signatures of the owners of the majority of the land front-
ing on said proposed improvement.   The proviso of the
statute making a petition necessary is, that "no improve-
ment shall be made or constructed except upon the peti-
tion of the owners of a majority of the land fronting on
the proposed improvement."   The recital is as broad as
the statute, and the context discloses with unmistakable
certainty that the petition was that which the statute re-
quired should be filed.   Whether the improvement should
be paid for out of the general tax fund or wholly or in
part by special assessment or special taxation was wholly
for the corporate authorities to determine.   The manner
of raising the fund was not a matter to be referred to in
the petition, hence no recital as to the prayer of the
petition in that respect was necessary.

The plans and specifications adopted by the ordinance
provided that a strip sixty feet in width on each side of
the boulevard should be improved, the intervening space
being a parkway.   The strips to be improved were parts
of the same general boulevard and would be connected
by intersecting streets.   The corporate authorities were
justified in regarding the entire enterprise as but one
and a single improvement.   *City of Springfield* v. *Green,*
120 Ill. 269; *Church* v. *People,* 179 id. 205.

The evidence was properly held insufficient to show
that, as was claimed, a large sum included in the assess-
ment was expended in defraying the cost of improving
the parkway which intervened between the strips the
ordinance provided should be improved.

.Prior to the adoption of the ordinance a "gravel roadway" had been constructed along the boulevard. This roadway was located within the limits of the strip to be improved on the side of the boulevard, upon which the property of some of the appellants abutted. Whether the property so adjacent to this gravel road should be regarded as having received as great benefit from the improvement made under the ordinance as other property which abutted on the other side of the highway was the subject to which the testimony of a number of witnesses was devoted. The testimony was not harmonious. We incline to agree with the trial court that no distinction in the matter of benefits ought to be made, under the evidence, because of the previous existence of. the gravel roadway.

We do not think the appellant Lombard has any just ground of complaint as to the amount assessed against his lots. In the judgment under the prior void ordinance the benefits to his property were assessed at the sum of $1000. The appellant Lombard, in his objection, says this assessment of $1000 was by an agreement of the parties, and that afterwards a subsequent agreement was entered into that he should pay the appellees the sum of $2000, making a total of $3000 to be paid by him. The'benefit to his property was assessed at $3800. It seems from the testimony the commissioners claimed a building line had been established on Lombard's property which restricted the erection of buildings thereon within fifty feet of the line of the boulevard. His lots were but ninety-two feet, or thereabout, in depth, and but about forty-two feet remained available for buildings, and the assessment of benefits in the sum of $1000 was based upon the alleged existence of such building restrictions. It appeared that Lombard subsequently filed a petition under the Burnt Records act to establish title to the premises, and made the park commissioners parties defendant, for the purpose of procuring a decree declaring the property free

from such building line. A decree was entered in that proceeding by consent, so far as it touched upon that question. The arrangement was, Lombard's property should be assessed $2000 and the building line should be placed at ten feet from the margin of the boulevard. Subsequently the decree was vacated as to the park commissioners and a final decree entered declaring the property to be free from any building restrictions whatever. The court correctly held the property of the objector Lombard was subject to assessment in the amount it should be found to have been benefited by the improvement, without regard to the former judgments or agreements, for the reason all of such judgments and agreements were avoided by the rendition of the decree, at the instance of said Lombard, relieving his lots from all restrictions whatever as to the location of buildings thereon.

Believing the record to be free from error the judgment appealed from is affirmed.      *Judgment affirmed.*