**CHILDRESS et al. v. CARWILE et al.
(Nos. 228–3405.)**

(Commission of Appeals of Texas, Section B. Dec. 14, 1921.)

1. **Municipal corporations ⬷⇒454—Charter held to require either assessment of benefits by commission or notice and opportunity to file objections.**

If Terrell Charter, art. 28, § 2, and article 29, §§ 1, 6, and 7, do not provide a single method for levying street assessments, it provides two methods, under one of which the assessment must be made by a commission of three citizens as on condemnation of a railroad right of way, and under the other property owners must be given notice and afforded an opportunity to prevent the assessment by filing objections; and where neither method was followed the assessment was void.

2. **Municipal corporations ⬷⇒408(1)—General paving law held inapplicable to city with special charter having inconsistent provisions.**

The general Paving Law, which in section 13 recites that in many cities no charter powers exist under which the cost of street improvements may be collected from abutting property owners, and which in section 12 provides that it shall not repeal any existing law, but that its provisions shall be cumulative, and, in addition to such existing laws, provided that in case of conflict with the provisions of any special charter the provisions of such special charter shall control, does not apply to a city having a special charter requiring either an assessment of the benefits by a commission of three citizens or notice to property owners and an opportunity to prevent the improvement by filing objections.

3. **Municipal corporations ⬷⇒514(1)—Reassessment of benefits may be made within time within which original assessment might have been made, but not afterwards.**

Under General Paving Law, §§ 8 and 9, where a street improvement assessment was

invalid for want of notice, a reassessment might be made at any time before the expiration of the time in which a valid assessment could have been originally made, but not after such time had expired, the absence of notice being jurisdictional, and not a mere irregularity.

4.ᐧ Appeal and error ⊂⇒719(11), 747(2)—Supreme Court not required to pass on matter as to which there was no assignment or cross-assignment of error.

In a suit to enjoin the enforcement of a paving certificate, in which the holder of the certificate reconvened and sought judgment in the alternative against ᐧthe city on the original paving contract, and a judgment in favor of plaintiff and the city was reversed by the Court of Civil Appeals, the Commission of Appeals is not called upon to pass on the certificate holder's. right to recover against the city, it not being brought before the Supreme Court by any assignment or cross-assignment of error.

Error to Court of Civil Appeals. of Sixth Supreme Judicial District.

Suit by B. M. Childress against W. L. Carwile and others. A judgment in favor of plaintiff and the defendant City of Terrell was reversed by the Court of Civil Appeals (213 S. W. 308), and they bring error. Reversed and judgment of the district court affirmed.

B. F. Word, of Dallas, and Thos. R. Bond, of Terrell, for plaintiffs in error.

Smith, Robertson & Robertson, of. Dallas, Robt L. Warren, of Dallas, Morris Brin, of Terrell, and Thompson, Knight, Baker & Harris, of Dallas, for defendants in error.

McCLENDON, P. J. This suit involves the validity of a paving certificate issued by the city of Terrell against B. M. Childress, under a special assessment ordinance of the city assessing the amount of the certificate against property of Childress located in Griffith avenue, and fixing a lien thereon.ᐧ The suit was brought on August 23, 1915, by Childress against the city, W. L. Carwile, and the Trinity Portland Cement Company for an injunction to prevent the enforcement of the certificate either as a lien against the property or as a personal obligation, alleging various grounds of illegality. Carwile and the cement company reconvened and sought judgment against Childress upon the certificate, and in the alternative prayed for judgment against the city upon the original paving contract. Judgment in the trial court was in favor of Childress, and in favor of the city upon the reconvention. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for Carwile and the cement company upon the certificate. 213 S. W. 308.

The questions of leading importance are whether the paving proceedings undertaken

by the city of Terrell are controlled by special charter provisions of the city or by the General Paving Law (chapter 14, Acts 2d Extra Sess. 1909, p'. 402), and, if controlled by the latter, whether the failure to give notice of the assessment to Carwile as provided in the statute was cured by subsequent assessment made after the suit was brought.

The facts material to these questions are substantially these: On March 20, 1911 (Sp. Acts 32d Leg. c. 51), the Legislature granted a special charter to the city of Terrell, under which the city has operated since that time. When this charter was granted the city had more than 5,000 and less than 10,000 inhabitants.

Article 28 of that charter, which is headed "Streets, ᐧSidewalks," etc, is composed of two sections, the first of which defines the general powers of the city with regard to streets, etc. Section 2 of that article reads as follows:

"Sec. 2. The commission shall fix and determine the nature of all sidewalks, streets,ᐧ drainage and sewerage improvemehts and decide the kind of material to be used. It shall also ᐧ fix and determine the necessity, nature and extent of streets and sidewalk improvements, repairs and reconstruction, and may at its discretion cause all or part of such streets and sidewalks to be constructed, reconstructed, graded, regraded, paved, repaved, or in any other way repaired, improved or maintained, and said commission shall have full power and authority to provide, by ordinance, for the manner of determining after notice and by due process of law not in conflict with other provisions of this charter, the amounts of benefits to each parcel of abutting property by reason of any such improvements, repair or reconstruction, and of a fair and just proportion, and of the amount of the cost of the same to be paid by each abutting owner, and the amount of costs so adjudged shall be a personal liability against such owner as well as a tax lien and charge upon his abutting property. All assessments and benefits and the proportion and amount of costs to be paid by the abutting owner shall, unless such owner and the city commission agree upon the same, be determined by a commission of three citizens, to be appointed in the same manner as in the condemnation of right of way for railroads, and the procedure and practice established by law in such condemnation cases, so far as applicable, shall govern assessments for streets and sidewalk improvements. The assessments of costs against an abutting owner shall in no case exceed the benefit of his abutting property as established by the judgment of the commission, but the owner shall be entitled to no reduction for benefits received by him in common with others, and the total cost, not in excess of the total benefits to abutting owners, shall be fairly distributed by . said commissioners among such owners, first ᐧdeducting the cost of street crossings and of such portions of said improvements, if any, as may be paid for by the street railroad companies, or other railroad companies, occupying portions of the street

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

under improvements, or required by their franchises to pay therefor."

Article 29, which is headed "Street Assessments," provides in detail for the method of levying assessments for street and sidewalk improvements. The first section of that article reads:

"Whenever the commission shall deem it necessary to grade, fill, raise, repair, macadamize, remacadamize, pave, repave, or otherwise improve any avenue, street or alley or portion thereof and shall be of the opinion that certain real estate abutting on or in the vicinity of such proposed improvement or improvements will be specially benefited thereby, and shall deem it just for the owner or owners of such real estate so specially benefited to pay the cost of such proposed improvement or improvements, or a portion of such costs, the commission shall by resolution so declare, such resolution to define the limits within which all real estate will be specially benefited by such proposed improvement or improvements.

"All real estate within such limits, as such limits may be finally established, as hereinafter provided, shall be known as an 'improvement district,' and when so established shall be designated by a certain number."

The second, third, fourth, and fifth sections relate to preliminary matters such as contents of improvement districts, method of estimating cost of improvements, report of assessed values in the district, and determination of method how the cost shall be paid, whether wholly by the owners or partly by the owners and partly by the city.

Section 6 provides that, after the above-noted proceedings, 10 days' notice by publication shall be given to all persons and corporations owning any real estate in the district, giving to the owners the right to object to the assessment. Section 7 reads:

"Objections.—If it shall appear from such objections filed that the owners of one-half in value of real estate within such improvement district are opposed to the making of such improvement or improvements, the cost of which is to be charged in whole or in part against them, in that event the commission shall so declare, and shall not order said improvement or improvements to be made. If a majority in interest shall fail to object, in the time and manner hereinbefore specified, the commission shall have the power to order such improvement or improvements made, and to provide for the payment of the cost of the same as provided in this act, and as otherwise provided in said city charter."

On April 1, 1912, the city, at a special election called for that purpose, adopted the provisions of the general paving law. Beginning with a resolution on October 21, 1913, various proceedings were had by the city for the purpose of paving Griffith avenue, the proceedings being conducted ostensibly under the provisions of the general paving act. Contract for the paving was finally let to

235 S.W.—35

Bert Hahn Construction Company, and the work was completed and accepted in the summer of 1914. No certificates having been issued as provided in the ordinance under which the paving was done, the city commission on September 14, 1915, by resolution authorized its chairman and secretary to issue assignable certificates in favor of W. L. Carwile, and on September 17, 1915, in pursuance of this resolution, the certificate in question was issued. No attempt was made to comply with the provisions of the special charter in regard to the assessment, and no notice of the above assessment was given, as required by the General Paving Act. On October 23, 1917, after this suit had been pending for over two years, an ordinance was passed providing for the reassessment against Childress and some of the other property owners. Notice was issued under this ordinance as provided in the General Paving Act, and on November 6, 1917, over the protest of Childress, an ordinance was passed making the assessment of $403.65 against his property, under which another certificate was issued. The facts relating to this reassessment were set up in amended pleadings of the defendants, and judgment sought upon the certificate issued thereunder.

It is contended by the defendants in error: First, that by adopting the General Paving Act the city of Terrell adopted a cumulative method of levying special street improvement assessments in addition to the method provided in article 29 of the city charter, and that it was optional with the city either to proceed under the provisions of that act or under the charter; and, second, that in any event two methods of assessment were provided in the city charter, one in section 2 of article 28, substantially the same as that under the General Paving Act, and the other in article 29, which provided the improvement district plan, and that the city had the option to proceed under either method.

[1] Considering the latter contention first, we are inclined to the view that the city charter provides a single and exclusive method for levying street assessments under article 29. This conclusion is based upon the following considerations: Article 28 deals generally with the subject of the control of the city over its streets, sidewalks, alleys, etc., whereas article 29 relates specifically to street assessments, and provides in detail for the method of levying them. Both section 2 of article 28 and article 29 provide for levying assessments in proportion to the benefits accruing to the property. The former relates only to assessing the benefits against the abutting owners, whereas the latter authorizes the assessment to be made either against the abutting owners or against all property in the vicinity of the improvements.

Section 2 of article 28 also states that its provisions shall not be in conflict with the other provisions of the charter, clearly indicating that the section was not intended to stand alone, but in conjunction with article 29, which is the only other provision in the charter providing for street assessments. It would therefore seem that the purpose of the Legislature in granting the special charter was to provide in section 29 a single method of levying street assessments, whether against the abutting property alone, or against all property in the vicinity of the improvements, and that, should there be any conflict between that article and section 2 of article 28, the latter should yield.

However, if this view be not acceded to, but one alternative is left, namely, that the charter provides two methods: One in section 2 of article 28, by which the city, without the consent of the owners, may levy an assessment against abutting property alone, under which method, if the city and the owners disagree, a commission of three citizens is to be appointed to make the assessment under the procedure provided for condemnation of right of way for railroads in so far as applicable; and another method in article 29 by which the city may assess the value or a part of the value against either the abutting property alone or against all property in the vicinity of the improvements, under which method, however, notice must be given before the improvements are ordered, and a majority in value of the owners to be affected are given the right to defeat the assessment. Neither of these methods was pursued in the present case; and it is clear that if the city, under its charter, had the option of following either method, still it was essential to the validity of an assessment either that it be made by a commission, the owners not agreeing to the assessment, or that the property owners be afforded an opportunity after notice of objecting to the assessment altogether. 4 Dillon on Municipal Corporations (5th Ed.) § 1457, and authorities there cited.

Unless, therefore, the general paving law, when adopted by the city, afforded an independent method of assessment irrespective of the provisions of the special charter, the assessment was void for failure to comply either with the provisions of section 2 of article 28, or of article 29, above noted.

[2] We recognize the force of the many decisions cited by counsel which hold statutes relating to assessments cumulative of prior statutes providing different methods of assessment. These decisions, however, we believe, are distinguishable from the present case, wherein the statute itself shows that it contemplates that there should be no conflict in method created by its adoption by any city having a special charter covering the subject. Section 13 of the General Paving Law, which is the emergency clause, recites that the necessity for the act was the fact that in many cities no charter powers existed under which the cost of street improvements could be collected from the abutting property owners benefited thereby; thus clearly indicating that the primary consideration for enacting the statute was to provide a method for levying street improvement assessments in those cities where there were no charter provisions on the subject, or where the charter provisions were defective, or inadequate. Section 12 of the act reads as follows:

"Sec. 12. This act shall not repeal any law, general or special, already in existence, pertaining to the making of such improvements, but the provisions of this act, and of resolutions or ordinances passed pursuant thereto, shall be cumulative of and in addition to such existing laws; provided, that in any case in which a conflict may exist or arise between the provisions of this act and the provisions of any law granting a special charter to any city in the state, the provisions of such special charter shall control."

The contention that the language in this section providing that the act should not repeal any existing law, but should be cumulative of and in addition to such law, should be construed to mean that, where an adequate law was provided by charter, the General Paving Law when adopted would constitute an additional method, separate and distinct from that provided by the charter, is, we think, not tenable. The proviso of the section quoted is to the effect that, in case of any conflict between the general law and the charter, the latter shall control. Both the general law and the charter provide for the assessment of the cost against abutting owners in proportion to benefits. The charter, however, gives the right to owners thus benefited to object to and thereby prevent the assessment, under the view that article 29 is exclusive; and if article 29 is not exclusive, the amount of the assessment, in case the owner does not agree with the city thereon, must be determined by a commission under section 2 of article 28. No such provisions are contained in the General Paving Law. Clearly there is a conflict between the charter and the General Paving Law in these respects, and by the terms of the general law it is the charter that must control. It would render the proviso which relates to conflicts meaningless to hold that by adopting the General Paving Law an independent method of assessment was adopted, irrespective of any method provided by charter; for, if that construction should be adopted there could be no conflict between the charter and the general law, as each would occupy a separate and distinct field, and the provisions of one could in no sense come in conflict with the

provisions of the other. Had the Legislature intended such construction, it would have been an easy matter to so state. We see no escape from the above conclusion under the plain language of section 12 of the General Paving Law.

[3] The conclusions we have reached above render it unnecessary for us to express an opinion upon the sufficiency of the second assessment under the General Paving Act. It is clear that notice under section 8 of that act was essential to the validity of an assessment; but it is to be borne in mind that under the General Paving Act the city authorities alone determine whether the improvements are to be made and whether the owners of abutting property are to pay for them in part. The act does not provide at what stage in the proceedings the notice shall be given. The first attempted assessment was made after the improvements had been made, the contract completed, and the work accepted. The attempted reassessment was made about two and a half years after that date. It is clear to our mind that the city would have the power to make a valid reassessment at any time before the expiration of the time in which it could have originally made a valid assessment. In such event the original invalid assessment should be treated as not having been made at all. It seems further clear to us that after such time had expired the city would not have the power under section 9 of the act to make a reassessment to cure an assessment invalid on account of lack of notice. Notice in such instance we think is fundamental and jurisdictional, and its absence not a mere irregularity. Such assessment is as ineffectual as if none had been attempted; and when the time has passed within which the assessment can be made upon notice, we think no reassessment can be made to cure the invalidity arising from want of notice. Whether the time within which the assessment could have been originally made had passed at the date of the reassessment is a question of such importance that we express no opinion thereon, in view of the fact that it is not necessary under the conclusion we have already expressed.

[4] The right of the defendants in error to recover against the city is not brought before the Supreme Court by any assignment or cross-assignment of error, for which reason we are not called upon to pass upon the questions raised in that connection.

We conclude that the judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.