Vinson, Elkins, Sweeton & Weems, of Houston (C. M. Hightower and E. E. Townes, Jr., both of Houston, of counsel), for appellants.

H. Fletcher Brown and Walter F. Brown, both of Houston, for appellees.

**GULF BITULITHIC CO. et al. v. SCANLAN et al.**

No. 10138.

Court of Civil Appeals of Texas. Galveston.

Dec. 19, 1935.

Supplemental Opinion Jan. 9, 1936.

Rehearing Denied Feb. 13, 1936.

PLEASANTS, Chief Justice.

This litigation was begun by a suit instituted in 1926 by appellant Gulf Bitulithic Company against the four living children of T. H. Scanlan, deceased, individually, and also as a business firm operating under the firm name of "T. H. Scanlan Estate." The purpose of the suit was to recover the amount due on a paving certificate issued to the plaintiff by the city of Houston on June 5, 1925, against the T. H. Scanlan Estate and his then seven living children, and to foreclose a lien upon the property of defendants fixed

by paving proceedings by the city council of the city of Houston. Judgment was rendered in the suit in favor of appellant for the amount due upon the certificate, together with reasonable attorney's fees as found by the jury trying the case. The defendants in that suit appealed. That appeal was heard and decided by the Austin Court of Civil Appeals, and the judgment of the trial court affirmed. Scanlan et al. v. Gulf Bitulithic Co., 27 S.W.(2d) 877. A writ of error from that judgment was granted by our Supreme Court, and upon the hearing in the Supreme Court the judgment was reversed and the case remanded. 44 S.W.(2d) 967, 970, 80 A.L.R. 852.

The opinion of the Commission of Appeals, which was approved by the Supreme Court, disposes of the case and the numerous questions presented in the application for writ of error in the following language:

"We have duly considered all the other complaints of the plaintiffs in error, which go to the validity of the assessment in question, and find no merit in any except the one which relates to the failure to apportion liability for the assessment that was levied in the lump sum of $7,810.22.
* * *

"Since the assessment in the form that it was levied is invalid, a recovery on the certificate, as it stands, cannot be had. We therefore recommend that the judgment of the trial court and that of the Court of Civil Appeals, affirming same, be reversed, and that the cause be remanded, without prejudice to any proceeding which any of the parties might see fit to institute in the premises."

The mandate of the Supreme Court issued on its judgment on March 22, 1932, remands the case "to the district court for further proceedings in accordance with the opinion of this court."

When the further proceedings suggested in the opinion of the Commission of Appeals was had, only three of the Scanlan sisters were living, each of the other sisters having previously died. There was no administration nor necessity therefor on the estate of any of these deceased sisters, and their interest in the property involved in this proceeding had passed by inheritance to the three surviving sisters in equal proportions.

In this state of facts, the appellant company on June 22, 1932, filed with the city council of the city of Houston a petition to correct and amend the ordinance of June 15, 1925, by which the original assessment was made, so as to separately assess against each of the three appellees her pro rata share of the cost of the street improvement for which the original assessment was made, and asking that a separate lien be fixed against the individual one-third interest of each of the appellees in the property.

On June 22, 1932, the city of Houston by resolution duly granted the petition of appellant Gulf Bitulithic Company, and provided for a hearing to be given appellees thereon on July 6, 1932. Notice being given in accordance with the city charter and said resolution, the hearing was held and was closed on July 13th. Appellees appeared at said hearing by their attorney herein and filed written protest. By ordinance dated July 13, 1932, the city council corrected and amended the ordinance of June 15, 1925, so as to apportion the original assessment of $7,810.22 and the lien securing same among and against appellees in the sum of $2,603.40⅔ each; the sums so assessed against each appellee being declared to be a lien on her undivided one-third interest in said property. Each appellee was given the right to pay the sum levied against her and thereby release her interest in the property. The ordinance further provided for issuance of assessment certificates to Gulf Bitulithic Company, and the contents thereof. The assessment ordinance of June 15, 1925, remained in full force and effect and unimpaired except as expressly corrected and amended.

On September 30, 1932, appellant company filed its third amended original petition seeking recovery against each of the three appellees upon the corrected certificates issued under the ordinance of July 13, 1932.

In the meantime, on July 23, 1932, each of the three Scanlan sisters, against whom the corrected certificates fixing the separate liability of these heirs was issued by the city council on June 13, 1932, brought separate suits against the appellant company and the city of Houston seeking a cancellation of the corrected certificates, and all of the proceedings on which they were based, on various grounds, which will be hereinafter stated as may be deemed necessary in deciding the questions presented by this appeal. Each of these petitions further pray for removal of the cloud

cast on the title of plaintiffs' property by the alleged unlawful proceedings of appellants. The defendants in these suits by appellees filed answers and pleas in abatement to the petitions of each of the appellees in the several suits brought by them. The ground upon which the pleas in abatement were based is in substance that the plaintiffs in the several suits cannot now raise any question as to the amount of the original assessment against their property for the following reasons:

"That in truth and in fact on June 15, 1925, the City Council of the City of Houston made and entered a final assessment ordinance creating and fixing a joint and several assessment and lien against T. H. Scanlan, M. E. Scanlan, Carrie Scanlan, Kate Scanlan, Charlotte Scanlan, Lillian Scanlan, Alberta Scanlan, and Stella Scanlan, and on the property described in plaintiff's petition, in the principal sum of $7,810.22, with interest at the rate of seven per cent. (7%) per annum from June 15, 1925, with reasonable attorney's fees; that suit was brought upon said assessment of June 15, 1925, against plaintiff and others, and cause was appealed to the Supreme Court of the State of Texas, and the Supreme court of the State of Texas reversed and remanded the case to the District Court of Harris County, Texas, solely on the ground that the joint assessment of June 15, 1925, was unenforceable. That after the Supreme Court had handed down said decision, the Gulf Bitulithic Company filed its petition before the City Council of the City of Houston praying that the ordinance of June 15, 1925, be corrected and amended so as the owners of said property be assessed separately, and the City Council did on July 13, 1932, correct and amend the said ordinance of June 15, 1925, so as to separately assess against plaintiff and her sisters, Kate Scanlan and Stella Scanlan, the sum of $2,603.40%.

"That prior to the assessment ordinance of June 15, 1925, the plaintiff in this suit, as well as all of her sisters and owners of the aforesaid property, were accorded a hearing before the City Council to contest the assessment or any error, invalidity or irregularity in the assessment or the question of special benefits, and they did not appear at said hearing and the said hearing was duly and legally closed, as required by the Charter of the City of Houston, and they did not file any suit within ten (10) days after the close of the hear-

ing as provided by the Charter of the City of Houston, to set aside the said assessment of June 15, 1925, and that, therefore, the plaintiff in this suit does not now have power or authority to bring and prosecute this suit based upon the ordinance of July 13, 1932, correcting and amending the ordinance of June 15, 1925. Therefore this suit should be in all things abated."

Appellants further demurred generally to these petitions on the grounds set out in their pleas in abatement. On motion of appellant company, the trial court, on October 26, 1933, entered an order consolidating the three separate suits brought by the respective appellees with the suit brought by appellant company. In his order of consolidation the trial court further ordered and directed that the parties in the consolidated causes re-plead their several pleas in abatement and the answers thereto. This order was complied with by all the parties.

Upon the trial, after the conclusion of the evidence, the appellees asked for an instructed verdict in their favor. The court refused this request, but took the case from the jury and rendered judgment for appellees. In passing upon the motion for an instructed verdict, the judgment contains the following recitals: "Whereupon the court stated to the parties that he would take the case away from the jury on the motion of the said defendants, Kate Scanlan, Lillian Scanlan and Stella Scanlan, for a peremptory instruction in their favor on the merits, and would render judgment in favor of the said Kate Scanlan, Lillian Scanlan and Stella Scanlan on the evidence introduced by the plaintiff, Gulf Bitulithic Company, such action to have the same force and effect as if the peremptory instruction was given and a verdict in accordance therewith returned by the jury, to which action of the court the plaintiff, Gulf Bitulithic Company, and the defendant, the City of Houston, excepted."

The judgment then proceeds as follows:

"It is, therefore, on this the 15th day of December, A. D. 1933, considered, ordered, adjudged and decreed by the court that all pleas in abatement herein be, and the same are hereby, overruled, to which all parties except.

"It is further ordered, adjudged and decreed by the court that the plaintiff, Gulf Bitulithic Company, take nothing by this suit, and that, as to the cause of action asserted by said Gulf Bitulithic Company

against defendants, Kate Scanlan, Lillian Scanlan and Stella Scanlan, go hence without day and recover of and from plaintiff, Gulf Bitulithic Company, their costs of suit in this behalf incurred.

"It is further ordered, adjudged and decreed by the court on the cross-action of the cross-plaintiffs, Kate Scanlan, Lillian Scanlan, and Stella Scanlan, as against the cross-defendants, Gulf Bitulithic Company and the City of Houston, that the ordinance of assessment dated July 13, 1932, being the ordinance referred to in the pleadings of all parties hereto, be, and the same is hereby canceled and declared to be invalid and unenforceable, and that the said Kate Scanlan, Lillian Scanlan and Stella Scanlan do have and recover of and from the said Gulf Bitulithic Company and the City of Houston all costs of suit in connection with such cross-actions, for which they may have their executions.

"To which judgment of the court said Gulf Bitulithic Company and said City of Houston except."

The recitals, it seems to the writer, make the judgment as a whole confusing and contradictory. The facts in the case are undisputed. These undisputed facts material to the issues presented on this appeal are set out in the respective pleas of abatement filed by the parties, and the judgment in effect sustains the pleas in abatement filed by the appellees, which it in express words refused to sustain.

The judgment refers to the merits of the case. The primary purpose of judicial investigations is to determine cases upon their merits, and such is the constant endeavor of our courts. The undisputed evidence shows that after due notice as required by the statute and the charter and ordinances of the city of Houston, hearing was had on the question of the benefits to the property by the proposed improvement of the street upon which it fronted. The findings of the board charged with the duty of determining this question were that the benefits to the property exceeded the costs of improvement. No attack was made by appellees upon this finding by the city council. A certificate in favor of appellant was issued by the city council, and upon the failure of the Scanlan sisters, against whom the certificate was issued, to pay the installments of the assessment as they accrued, suit was brought by appellant against them on the certificate. This suit resulted in a judgment in

favor of appellant for the amount due upon the certificate, with foreclosure of the lien given by the statutes and charter of the city of Houston. Appellees appealed from that judgment and the Austin Court of Civil Appeals, to which the appeal was transferred from this court by the Supreme Court, affirmed the judgment. Scanlan et al. v. Gulf Bitulithic Co., 27 S.W. (2d) 877.

As we have before shown, the Supreme Court granted a writ of error from the judgment of the Court of Civil Appeals, and in the opinion reversing that judgment expressly confined the reversal to the failure of the city council to separately assess the interests of the appellees in the property, and remanded the cause "without prejudice to any proceeding which any of the parties might see fit to institute in the premises." 44 S.W.(2d) 967, 972, 80 A.L.R. 852. The right to a reassessment for correction of mistakes of this kind is authorized by the charter of the city of Houston and the Revised Statutes of this state. Houston City Charter, art. II, § 2, art. IVa, §§ 9, 11, 13, and 16; Revised Civil Statutes of Texas, arts. 1097–1099 and art. 1175, subd. 16.

The decisions of our Supreme and appellate courts construing and upholding the validity of these statutes and charter provisions are numerous and uniform.

In Flewellin v. Proetzel, 80 Tex. 191, 15 S.W. 1043, 1045, our Supreme Court says:

"There existed no reason why an assessment could not be corrected; or when one wholly invalid had been made a new roll could not have been prepared. * * *

"Under such circumstances, should the contractor lose his debt? We think not. We think it was proper and competent for the city council to call for an amended roll, and, when correct, to approve it, and to call in the old certificates, and to issue new. We do not see that the appellee was in any manner injured by this action."

In Anderson v. Brandon, 121 Tex. 188, 47 S.W.(2d) 261, 262, the Supreme Court held that the provision of article 1175, subd. 16, giving home-rule cities the power to assess property for street improvements, "of necessity clothed such cities with such incidental powers as were essential and necessary to make effective the power thus granted. * * *

"It is a cardinal rule of statutory construction that the courts must presume

that the Legislature, in the enactment of a law, always intends to confer all such incidental powers as are necessary to render effective the powers expressly granted. Brown v. Clark, 102 Tex. 323, 116 S.W. 360, 24 L.R.A.(N.S.) 670; 36 Cyc. p. 1113."

The opinion of the Supreme Court on the former appeal of this case, as before shown, expressly refused to hold that the original assessment was void and created no liability against the owners of the property that had received benefits from the improvement of the street in excess of the amount charged against the owners as cost of the improvement, but only reversed the judgment on the ground that the certificate was not properly issued, because it made each of the owners of an undivided interest in the property jointly liable for the whole cost of the improvement assessed against the property. This opinion is an example of the constant endeavor of our courts to decide cases on their merits.

The same clear distinction between an amendment of an incorrect certificate, and a reassessment of property on the ground that the original assessment which attempted to create the debt or liability is void, is made by Justice Greenwood in the case of City of Dallas v. Atkins, 110 Tex. 627, 223 S.W. 170.

■■ The main grounds upon which appellees sought to defeat liability on the several certificates sued on, as shown by their pleas in abatement and their exceptions to plaintiff's petition, were that the proceedings in 1932 making the certificates separate, so as to protect each of the owners of an undivided interest in the property against joint liability for the entire assessment, were unenforceable because they were payable more than four years after the completion of the improvements; and that appellant's suit for recovery of the cost of the improvements is barred by limitation.

The majority of the court agree with appellant that the provision in section 9, art. IVa of the City Charter, "That the City Council shall have power to provide that the assessments shall be payable in installments, not, however, exceeding five, the last payable not exceeding four years from the completion by the City of the improvement," cannot be construed as prohibiting the city from making other than a four years' installment assessment. Section 4a of art. II of the Charter, which deals with assessments for cost of street improvements, provides: "The City Council in making any assessments may prescribe when the same shall be due and the said City Council is expressly authorized to provide that such assessments may be payable in installments."

Section 4a of this article also contains the following provision: "Wherever any error or mistake shall occur in any proceeding herein provided for, it shall be the duty of the City Council to correct the same, whenever it shall have determined that any assessment is, for any reason, invalid, unlawful or unenforceable, then it shall be the duty of the City Council to re-assess against such property and the owners thereof, such proportion of the cost of improvement as may be lawful and to fix a lien against said property and declare the personal liability of the owners thereof; said City Council shall have the power, and it shall be its duty to adopt such rules and regulations and make such order as shall, in compliance with the law, provide for the correcting of said mistakes and making a valid reassessment against said property. It shall, by resolution, order such reassessment and it shall order such of the old proceedings as appear to be improper, to be again gone over and corrected. Where the original special commissioners, or any of them, are not available, such fact shall be called to the attention of the Judge of the County Court of Harris County at Law, and he shall by appointment complete a Board of Special Commissioners who may make such reassessment, and who may avail themselves of all proceedings in the original assessment that may have been valid. The right to reassess shall not be barred or lost by the City until six (6) years from the date of the original assessment and the time of any suit attacking the validity of the assessment shall be excluded from such computation. The powers of the City Council with reference to such reassessment shall be sufficient to place such reassessment on the same basis as though the first assessment had been a valid assessment."

It seems clear to the majority of the court that under the charter and statutory provisions before set out that these contentions of appellees are without merit, and the trial court erred in sustaining them.

In addition to the authorities before cited, the following are in point and we think sustain the conclusions above expressed: McAlexander v. Smith Bros. (Tex.Civ.App.) 62 S.W.(2d) 530; Clark v. Pearson & Co. (Tex.Sup.) 39 S.W.(2d) 27; Booth v. Uvalde Rock Asphalt Co. (Tex.Civ.App.) 296 S.W. 345; Likes v. City of Rolla, 190 Mo.App. 140, 176 S.W. 520; Dollar Savings Bank v. Ridge, 183 Mo. 506, 82 S.W. 56; State ex rel. Minnesota Transfer R. Co. v. District Court of Ramsey County et al., 68 Minn. 242, 71 N.W. 27; Hughes v. City of Portland, 53 Or. 370, 100 P. 942; Taxation by Assessment, by Page & Jones, Sections 958 (p. 1619), 965 (p. 1628), 978 (p. 1647), 1052 (p. 1744), 1083 (p. 1788); 23 Texas Jurisprudence, 479; 28 Texas Jurisprudence, 243.

We have not deemed it necessary to discuss or state the numerous contentions presented by appellees in their counter propositions. None of them can, in our opinion, be sustained. If it could be held that the provisions of the ordinance making the amount due as fixed by the reassessment ordinance in 30 days after the passage of the ordinance was unauthorized, such error is not one of which the appellees can be heard to complain.

For the reasons indicated, we are of the opinion that the judgment of the trial court should be reversed and judgment here rendered in favor of appellants, and it has been so ordered.

Reversed and rendered.

GRAVES, Justice (dissenting).

On June 15, 1925, the Houston city council levied a joint paving assessment against Misses Kate Scanlan, M. E. Scanlan, Carrie Scanlan, Charlotte Scanlan, Lillian Scanlan, Alberta Scanlan, and Stella Scanlan, in connection with the paving of Telephone road.

On the same day the city council issued and delivered to the Gulf Bitulithic Company a paving certificate against the Misses Scanlan, disclosing on its face the fact that the assessment levied was a joint assessment, and not a separate assessment against each defendant, such as was required by the city charter, especially article IVa, and the decision of our Supreme Court construing it. Scanlan v. Gulf Bitulithic Co., 44 S.W.(2d) 967, 80 A.L.R. 852.

Prior thereto, in 1920, the Supreme Court had held that such an assessment was invalid and unenforceable, in construing provisions of the Dallas City Charter of essentially the same import. City of Dallas v. Atkins, 110 Tex. 627, 223 S.W. 170.

The assessment was levied under an amendment to the Houston Charter, added by special act of the Legislature in 1911, subject to the action of the voters, and this amendment to the charter contained the following provisions, the italics being added here: "Sec. 11. Duty of Council to Correct Errors. Whenever any error or mistake shall occur in any proceeding under this Article, it shall be the duty of the City Council to correct same; *and whenever, for any reason, it shall appear that any assessment or claim for personal liability fixed or attempted to be fixed against any property or its owner hereunder is unenforceable on account of any error or invalidity in any of said proceedings, or the assessment of any property has been by error omitted, the City Council shall have power and it shall be its duty at any time to reassess against said property and its then owner the amount determined to be properly payable by said owner after notice to and hearing of said owner in the manner hereinbefore provided.* But no reassessment shall be made against any property in any amount in excess of special benefits thereto in enhanced value thereof by means of the improvement."

Under section 9 of this charter amendment, the city council is expressly stated to be without power to levy any paving assessment that will become payable more than four years from the completion of the improvement and its acceptance by the city, but notwithstanding this fact, the record undisputedly shows that the Gulf Bitulithic Company made no request for a reassessment, and took no steps to have the city council correct or amend the assessment. It accepted the certificates then tendered by the city, and on January 28, 1926, brought suit on the assessment as it stood, alleging that Misses M. E. Scanlan and Carrie Scanlan had died before the paving proceeding had been inaugurated, and that the assessment against these deceased sisters as part owners of the property was a mistake caused by the fact that their deaths were not known to the Gulf Bitulithic Company at the time of the assessment. It specifically stated in its pleadings, however, that in all other respects

the assessment was strictly in accordance with the charter, the pleadings containing no allegation that the joint assessment was due to any error or mistake on the part of the city council.

The cause so declared upon was tried, and an effort was made to obviate the patent invalidity of the joint assessment by having included in the judgment a provision that any one of the four living sisters might pay one-fourth of the judgment and secure a release of herself and her one-fourth of the property. On the appeal of that judgment to it, however, the Supreme Court held that the assessment was invalid; that it could not form the basis for a recovery; and that such a provision in the trial court's decree did not render the assessment valid. 44 S.W.(2d) 967, 80 A.L.R. 852, supra.

Thereafter, in 1932, the Gulf Bitulithic Company, after carefully deliberating anent the course it would pursue, as the record shows, did not ask for a *reassessment,* but requested the city council *"to correct and amend"* the ordinance of June 15, 1925, by at that date dividing the assessment made seven years before into three equal parts of $2,603.40⅔ each. With that objective, it filed an application on June 22, 1932, asking that this be done. On the same day that application was filed, the city council passed a resolution granting the petition in all things as prayed for, and directing that notice be given to the three surviving sisters to appear and show cause why the 1925 ordinance should not be *"so corrected and amended."* The three sisters appeared and protested, offering evidence as to numerous alleged irregularities and errors in various proceedings, including also the prior proceedings; but their tenders were refused, and the city council proceeded with the undertaking *"to correct and amend the 1925 ordinance, as requested."*

Each of the divided assessments was made payable in one installment, due thirty days after July 13, 1932.

Within ten days thereafter each defendant filed suit in the district court of Harris county, challenging the validity of the attempted proceedings, and also the validity and regularity of various proceedings leading up to such newly declared assessments.

Later, on September 30, 1932, the Gulf Bitulithic Company filed its third amended original petition in the original cause, No. 122433, in which petition it sought a separate judgment against each defendant for the amount assessed against her, with foreclosure against her one-third of the land alleged to abut on the paving.

To this amended petition the defendants filed pleas in abatement, claiming that the suit of the Gulf Bitulithic Company on its amended petition should be abated, because the matters there in controversy were in controversy in the three suits attacking the assessments, and that, since the assessments were now no longer a joint assessment, there was a misjoinder of parties and of causes of action.

In the three suits so filed by the Misses Scanlan, the Gulf Bitulithic Company and the city of Houston filed pleas in abatement, claiming that the ordinance of July 13, 1932, and the resolutions preceding the same, merely corrected an error in the ordinance of June 15, 1925, and did not constitute a reassessment, hence the Misses Scanlan had no right under the charter to file these three suits.

Still later, on motion of the Gulf Bitulithic Company, all four suits were consolidated; the defendants Kate Scanlan, Lillian Scanlan, and Stella Scanlan, excepting to this order.

By agreement of the parties all pleas in abatement were to be regarded as not waived, but to be heard and considered in connection with the issues on the merits.

On the trial the defendants, at the close of the plaintiff's evidence, moved for an instructed verdict on their pleas in abatement, and, should that be refused, for an instructed verdict on the merits. The motion on the pleas in abatement was overruled, but the motion on the merits was sustained, and the judgment was rendered in favor of the defendants.

On the facts and proceedings thus recited, these conclusions of law are drawn:

(1) The assessments forming the basis of plaintiff's suit are invalid and unenforceable, because they are payable more than four years after the completion of the improvement and its acceptance by the city, the city council having no authority under the charter of the city of Houston to levy any paving assessment payable more than four years after such completion and acceptance.

(2) The 1932 proceedings cannot form the basis for a recovery against the defendants and their property, because such proceedings were not begun or prosecuted within a reasonable time after the Gulf Bit-

ulithic Company and the city of Houston knew, and must in the exercise of ordinary care have known, the facts rendering the 1925 assessment invalid and unenforceable.

(3) No recovery can be had under the 1932 proceedings, because, before these proceedings were begun by the Gulf Bitulithic Company on June 22, 1932, its right, if any, to the relief sought in its petition then filed with the city council was barred by its laches, by limitation, and by the law of stale demand; there having been an unreasonable delay of more than seven years prior thereto, during all of which time that company and the city of Houston knew, and in the exercise of ordinary care must have known, the facts rendering the 1925 assessment invalid and unenforceable.

(4) The causes of action, if any, of the Gulf Bitulithic Company against the defendants and their property, are barred under the statutes of limitation of this state, the two-year statutes and the four-year statutes (Vernon's Ann.Civ.St. arts. 5526, 5527), for the following reasons, to wit:

The running of the statutes of limitation could not be indefinitely postponed by the failure of the Gulf Bitulithic Company to take such steps as were necessary to secure a valid assessment after that company and the city of Houston knew, or in the exercise of reasonable diligence should have known, the facts rendering the 1925 assessment against the defendants and their property invalid and unenforceable. Limitations began to run when they knew, or in the exercise of reasonable diligence should have known, these facts and, since the evidence shows conclusively that they knew, and must in the exercise of reasonable diligence have known, these facts more than two years and more than four years before the commencement of the 1932 proceedings, and more than two years, and more than four years, before the filing of the amended petition first seeking a recovery on account of the 1932 proceedings, the court properly held that the plaintiff was not entitled to recover.

(5) The causes of action upon which the plaintiff bases its suit are barred under the two-year statute of limitation in this state, for the reason that it appears from the uncontroverted evidence that under the Houston Charter no valid assessment can be made payable more than four years after the completion of the improvement on which it is based and the acceptance thereof by the city; that, under the laws of this state, a suit on a paving assessment is barred by limitation, unless it is brought within two years from the date when the assessment became due; whereas, the cause of action upon which plaintiff sues was asserted for the first time in an amended pleading filed more than seven years after the completion of the improvement and its acceptance by the city. .

(6) No recovery can be had under the 1932 proceedings on the theory that they merely correct and amend the 1925 assessment ordinance, for the 1925 assessment was void and unenforceable, and could not be made valid by correction and amendment; a reassessment being necessary under the charter.

(7) There can be no recovery on the theory that the 1932 proceedings constituted a valid reassessment, for the Gulf Bitulithic Company pleaded that these proceedings constituted merely an attempt to correct and amend a prior ordinance and not an attempt to reassess, and, in the trial court, it urged and insisted that such was the correct construction to be placed on these proceedings.

(8) No recovery can be had on the 1932 proceedings on the theory that they constitute a valid reassessment, for these proceedings do not comply with the provisions of the Houston Charter relating to reassessments.

(9) The purported assessment against each of the defendants is void, because it undertakes to assess and impress separately against each of them one-third of the entire tax on the property, and corresponding several liens for its enforcement, when no one of the present three defendants owned one-third of the property at the time the improvement was ordered, nor at the time the contract was made, nor at the time of the original assessment against the property owners, nor at the time the work was done, nor at the time of any of the other proceedings for the pavement.

Since, if these conclusions be sound, the appellant's suit would fail anyway, it is not deemed necessary to herein also consider—as affecting other features—the attacks made by the appellees either upon the effectiveness or the constitutionality of the laws and charter-provisions upon which it was based, nor their cross-assignments going only to the trial court's refusing their

pleas in abatement and consolidating the several cases.

Wherefore, as here viewed, and as the above-enumerated deductions are thought to adequately foretell, this cause is reduced to just one controlling inquiry, which is: Were the 1932 proceedings at the time and in the way undertaken nonmaintainable, either through inherent vice, or because instituted too late? As indicated supra, when the challenge of the 1925 assessment reached it, the Supreme Court held that it had been when levied and then still was invalid, for the reason that there, was no authority anywhere in the city charter (especially in section 9 of Article IVa) authorizing the city to make such a lump-sum assessment; in so doing, after overruling all other attacks made in the proceeding "which go to the validity of the assessment in question," the opinion of the Commission recommended "that the cause be remanded, without prejudice to any proceeding which any of the parties might see fit to institute in the premises." Notwithstanding this quoted recommendation, no reason is perceived as to why the ground for holding the assessment invalid and unenforceable—that is, because contravening an express provision of the city charter requiring proportional assessments against their, several interests, a lump sum against them all being unauthorized—was not just as fundamental and jurisdictional as the lack of notice was held to be in Childress v. Carwile (Tex.Com.App.) 235 S.W. 543, at page 547; if the lack of notice required by the Terrell City Charter went to the validity of the assessment without it, it would seem that the called-for separate apportionment against each owner in the Houston City Charter would be equally so, and apparently that it is precisely what the Commission meant in using this expression in so declaring the Scanlan assessment of 1925 invalid: "We have duly considered all the other complaints of the plaintiffs in error, which go to the validity of the assessment in question, and find no merit in any except the one which relates to the failure to apportion liability for the assessment that was levied in the lump sum of $7,810.22." See 44 S.W.(2d) 967, at page 970, middle column 2, 80 A. L.R. 852.

Appellant at great length urges that the quoted recommendation, on the contrary, should be construed as a limitation upon the court's otherwise absolute declaration that the lump-sum assessment "was and is invalid"; but no question whatever having been there involved concerning an amendment of that joint assessment or a reassessment in place of it, nor yet any as to the prescribed procedure or limitation periods appertaining to either—just whether it was valid or invalid—it becomes difficult to see how that meaning can be ascribed to it; especially since it embraced the parties on both sides and "any proceedings" (presumably anywhere, in court, before council, or alibi) they might choose to institute; rather would it seem to have been a merely precautionary observation against misconstruction by either side of the only two affirmative holdings therein made: (1) That none of the other attacks "going to the validity of the assessment in question" were meritorious; (2) that the failure to apportion the liability put it down and out as an assessment.

At all events, however, it is submitted that it was structurally invalid, hence unamendable and incurable, except by a valid reassessment made within the time and conditions prescribed in the city charter, especially in article IVa, sections 7, 9, and 11, just as was that in Childress v. Carwile, supra, where it was held that an assessment which would not be valid as an original one, because made after the time fixed therefor, would neither be so as an amended, corrected, or new one; in other words, that no different rule in this respect applies to corrected assessments, or reassessments, from that governing original ones.

It also seems clear, particularly from the above-italicized part of section 11 of article IVa of the charter, that this invalidity of the original assessment could not be cured by a mere amendment or correction, even if that had been undertaken in the required manner, substance, and time—none of which in fact was done, appellant having chosen in 1925 to accept it as valid in all respects, doing nothing for seven years thereafter except trying by litigation in the courts to vindicate that judgment on its part, although the certificate carried the badge of its infirmity on its face, in that it specified joint instead of proportional liability; this section 11 is in two prongs, the first (not italicized) providing that it shall be the duty of the city council to correct "any error or mistake that shall occur," which authority over mere "errors or mistakes"

is also repeated in succeeding section 9, with the added specification that these may also be corrected "at the suit of any interested party," the second (or italicized) portion plainly providing that, whenever any *error or infirmity rendering the assessment unenforceable or invalid* shall appear, an entirely new or reassessment is required, available only after "notice to and hearing of said owner in the manner hereinbefore provided"—that is, in preceding section 7, where the specifications for the hearing are detailed.

Thus separating the two distinct classes of "errors" section 11 deals with, also clarifies the holdings of our courts on questions arising under it; the mere "errors and mistakes" referred to as constituting the first of these classes are evidently those made in the descriptions of property, the designation of owners, the mixing-up of names, and the like, which are subject to correction by the city council, or in a court of equity, of which group a plain example is McAlexander v. Smith Bros., 62 S.W. (2d) 530—so much relied upon by the appellant here—where this court simply held, quoting syllabus 2: "City council could correct assessment by including name of true owner and not owner of record by amendment of original assessment, ordinance without going through complete reassessment proceedings."

On the other hand, however, where "any error or invalidity" goes deeper to the extent of rendering the assessment unenforceable as made (which is precisely what the Commission held as to this one), a reassessment is necessary, after a repetition of the same notice to and hearing of the owner as is accorded by section 7 in the first instance; that was precisely the situation here obtaining, there being no mere inadvertence, mistake, or error, on the part of the city or the appellant, both then well knowing that the assessment they were dealing with was, as well as intending that it should be, a joint one, there being no attempt at the time to make a separate one against each of the owners; wherefore, the ordinance then, enacted to the satisfaction of both and evidencing their mutual knowledge and purpose, with a like understanding of all the facts, could not be in 1932 so corrected as to make it then do what the council did not intend to do when enacting it in 1925; these facts distinguish the case at bar from that of Texas Bitulithic Co. v. Henry (Tex.Civ.App.) 197 S.W. 221, 223, on which appellant also relies in this connection, in that, the burden being upon Mrs. Henry to show that an unreasonable length of time had elapsed after the error declared upon was discovered before the reassessment proceeding was begun, the evidence failed to show just when the error was discovered, for which reason the court could not assume as a matter of law that an unreasonable length of time had elapsed between its discovery and the initiation of the reassessment proceeding; whereas here, as already indicated, no such situation existed, since both the city and the appellant at the date of issuance of this certificate on June 15 of 1925, and at all times thereafter, knew the fact of its being a joint one, hence were bound to know that it was invalid under the law. 31 Tex.Jur. 371; Ball, Hutchings & Co. v. Presidio County, 88 Tex. 60, 29 S.W. 1042; Craig v. Cartwright, 65 Tex. 413, 422; Bryan v. Crump, 55 Tex. 1; Chambers & Co. v. Little (Tex.Civ.App.) 21 S.W.(2d) 17; Wray v. Citizens' National Bank (Tex.Com.App.) 288 S.W. 171.

That no reassessment proceeding was ever asked for prior thereto, nor declared upon in the pleadings, or trial proceedings, of the present suit, stands undisputed in this record, as does the further established fact that in none of these 1932 proceedings herein relied upon was there ever any attempt to comply with the requirements of section 7 of article IVa of the charter, which lays down the requisites of reassessment proceedings; while in this respect appellant is not entitled on the appeal to wholly change the theory upon which it tried the cause below, were it permitted to do so, it could get nowhere, for the further stated reason that no sort of compliance was had with these requisites of section 7, no need being here felt to recapitulate the details, neither the resolution nor the notice therefor containing any of the specified essentials, nor the hearing itself pursuant thereto being any such a one as to afford the owners the right to make any objections they saw fit concerning any alleged error or invalidity in the proceedings; in a word, none of the proceedings themselves indicate they were intended as a reassessment, but simply reflect that the city council had already granted appellant's application "to amend and correct" certain alleged errors in a prior ordinance and that this was the only matter before the council for consideration.

Furthermore, by section 9 of article IVa, the city council had no power to thus make these 1932 assessments payable more than four years after the completion of the improvement and its acceptance by the city, which was so done, the completion and acceptance of the improvement having been accomplished on June 15, of 1925, or more than seven years before the ordering of the corrected or amended assessments of August 12 of 1932. These authorities from other states hold such assessments to be unenforceable and void: McAndrew v. Dunmore Borough, 245 Pa. 101, 91 A. 237; Culver v. People, 161 Ill. 89, 43 N.E. 812; Cummings v. West Chicago Park Commissioners, 181 Ill. 136, 54 N.E. 941; West Chicago Park Commissioners v. Farber, 171 Ill. 146, 49 N.E. 427.

Appellant in its argument relies also upon R.S. art. 1100, as well as upon section IVa of article II of the Houston City Charter, but neither is thought to have any application, for these reasons:

Article 1100 only applies where a city has used its own funds or obligations in payment for the improvement and is attempting to reimburse itself by assessments against the abutting property—no such question being involved in this suit.

Section IVa of article II specifically provides it shall have no application to any proceedings theretofore inaugurated, and (1) it deals with establishing, widening, or lengthening streets, and not with paving or improving them; (2) it was not a part of the charter when the original act of 1911 amending the charter (chapter 23) was passed; (3) it was adopted in 1926, subsequent to the time when this paving was completed on Telephone road.

This being a mere dissent, further detailed discussion is foreborne, since the consecutively numbered conclusions of law stated supra cover all further questions here deemed material to the appeal, under recitations herein made of what are deemed to be the established facts giving rise to them; the judgment of the trial court should have been affirmed.

## Supplemental Opinion.

PLEASANTS, Chief Justice.

The opinion herewith filed was first filed on December 19, 1935. After it was filed, the writer's attention was called to the entry on the docket of the court made on the day the cause was decided reversing and remanding the case. Justice GRAVES, who dissented from the majority in the disposition of the appeal, filed his opinion in the case on the date of the filing of our original opinion, and immediately left on his Christmas recess. After ascertaining the inconsistency in the disposition of the case in the majority opinion and that indicated in the docket entry, we withdrew our opinion, and held the matter in abeyance until the return of the dissenting justice. We have to-day corrected the docket order to conform to the disposition of the case made in our opinion and re-filed the opinion heretofore withdrawn.

Just how the original entry on the docket came to be made is hard to explain, but was probably due to an error or inadvertence of the writer. This supplemental opinion is filed to relieve my associates of any responsibility for the conflict between the opinion and the docket entry.